THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP C. GRAMAGLIA, Appellant.

Fourth Department, December 14, 1979

### APPEARANCES OF COUNSEL

*Nathaniel A. Barrell (Joseph Shifflett* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (John De Franks* of counsel), for respondent.

### OPINION OF THE COURT

MOULE, J.

At about 2 o'clock on the morning of June 25, 1977, following a high speed auto chase, several men pulled 18-year-old Richard Y. Long from his automobile by the hair and beat him because of an earlier traffic incident. Long died as a result of injuries he sustained in the beating. On October 14, 1977 Philip Gramaglia and Gary Atti, both Buffalo police officers, Jack Giammaresi, Richard Atti, Richard Turchiarelli, Joseph Gerace and Pasquale Vitale were indicted for manslaughter in the first degree, manslaughter in the second degree and assault in the second degree.

During the seven-week trial, 78 witnesses took the stand, including Gramaglia, Giammaresi and Gary Atti who, in dramatic testimony, admitted their involvement in the incident, implicated Sam Fusco, who was not indicted, and exonerated the remaining four defendants.

Early in the evening of the beating, the defendants were at the home of Richard Atti celebrating his forthcoming wedding. From there the group went to a bar where they continued to drink heavily and, sometime after 1 o'clock in the morning, they left there to go to a second bar. Gramaglia testified that as he drove his auto along Kenmore Avenue, a green Porsche repeatedly cut in front of him and slowed, forcing him to apply his brakes. The Porsche finally turned off of Kenmore Avenue, stopped and its driver, Long, made an obscene gesture at Gramaglia. Gary Atti, Gramaglia's passenger, left the auto and attempted to approach Long who drove forward just fast enough to keep out of Atti's reach. Gramaglia called Atti back to the auto and, seeing Giammaresi and Fusco in Giammaresi's auto in the driveway of a nearby service station, signaled to Giammaresi, the driver, to try to cut off the Porsche. Giammaresi did not succeed and a high speed chase ensued. The Porsche finally stopped in the middle of the street in front of Long's apartment and Gramaglia

drove his auto around the Porsche and stopped. Gramaglia and Atti then pulled Long from the Porsche; Gramaglia grabbed him by the shirt and punched him twice while Atti punched him from behind. When Long fell to the ground, Gramaglia kicked him in the body. Giammaresi, who arrived at the scene after Gramaglia and Atti, punched Long and struck him on the head with a wodden-soled shoe.

John Barden, who lived with Long, attempted to come to his aid but was held back by some of the attackers. He testified that he shouted, "[Y]ou're going to kill him," and that one of the attackers responded, "[N]o, we're not, we're just going to teach him a good lesson." He also testified that he ripped a medal from the chest of one of the men, and that the medal was later recovered at the scene and found to be engraved "PCG 311", which are Gramaglia's initials and police badge number.

As Long lay on the ground, Gramaglia and Atti yelled at him to "get up". Gramaglia attempted to pull him to his feet and, when Long refused to leave the ground, Atti kicked him in the head. After one of the attackers shouted, "[L]et's get the hell out of here," the men ran to their autos and left.

Prosecution witnesses testified variously that from 6 to 13 men from two or three autos took part in the beating, which lasted from 30 seconds to just under 10 minutes. Each defendant was identified by at least one witness.

Long was pronounced dead on arrival at Sisters Hospital and an Erie County associate medical examiner testified that Long suffered a broken nose, bruised pancreas and bruises and cuts on the arms, chest and head. He stated further that, in his opinion, Long, who was intoxicated at the time of his death, died as a result of the aspiration of blood from a nasal hemorrhage caused by the fractured nose.

The People contended that irrespective of who struck the fatal blow, the defendants were all guilty as accessories. The jury convicted Gramaglia, Atti and Giammaresi of the lesser included charge of criminally negligent homicide, and acquitted the remaining four defendants of all charges.

On this appeal Gramaglia contends that errors in the court's charge to the jury require a reversal and a new trial.

He contends that the court committed reversible error by charging the jury that liability for criminally negligent homicide could attach under a theory of accessorial liability. Gram-

aglia maintains that it is logically impossible to "intentionally aid" another to commit a criminally negligent act.

■ A person is guilty as an accessory for the criminal conduct of another when, "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law, § 20.00). Section 15.05 of the Penal Law defines "mental culpability" to include criminal recklessness and criminal negligence. Section 125.10 of the Penal Law provides for "criminal negligence" as an element of criminally negligent homicide. Accordingly, the statutory scheme permits accessorial liability to attach for criminally negligent homicide provided that each accessory shares the requisite culpable mental state for that crime and intentionally aids another in its commission.

Supporting this conclusion is *People v Lieberman* (3 NY2d 649) in which the Court of Appeals held that one could be convicted of aiding and abetting a manslaughter which occurred in the heat of passion and without a design to cause death. The court stated that each person who acted in concert was chargeable with the consequence of the action even though the resulting death was unexpected and formed no part of the original scheme.

Gramaglia additionally contends that the court erroneously charged the jury that if it found any defendant guilty of assault, then no defendant could be convicted of a homicide. The court instructed the jury that it should not stop considering the homicide counts as to any defendant until it had first concluded that no defendant struck the blow that caused Long's death. This charge, Gramaglia argues, was tantamount to instructing the jury that the defendants were accessories as a matter of law and either all guilty of an assault or all guilty of a homicide.

Gramaglia asserts that there was evidence from which the jury could have concluded that he was guilty of assault in the third degree while other defendants were guilty of a homicide. This would be the result, Gramaglia reasons, if the jury found, first, that he did not strike the blow that caused Long's death and, second, that he was not an accessory of the defendant who did. He urges that the evidence shows that none of the blows he struck could have been fatal and that rather than intentionally aiding the others he was simply venting his own separate feelings on the Long boy.

■ The portion of the charge complained of occurred in the section of the charge dealing with assault in the second degree. The court, in several other sections of the charge, properly instructed the jury that the acts of one defendant should not influence the verdict as to another defendant except on the basis of accessorial liability under section 20.00 of the Penal Law. In addition, the court's instructions when dealing with accessorial liability were full and proper. Nevertheless, the court did, in the section complained of, erroneously suggest that all of the defendants should be treated as accessories and, although such statement might have been harmful if standing alone, it was rendered harmless by eight other instructions on accessorial liability which occurred in the lengthy charge which was well balanced and fair.

■ On review we must inquire whether the claimed error influenced the jury and tainted its verdict. If the record demonstrates that it did not, then the defendant is not entitled to a second trial. Errors are inevitable in any trial, and a defendant is entitled to a fair trial, not a perfect one *(Brown v United States,* 411 US 223, 231; *People v Crimmins,* 36 NY2d 230; *People v Kingston,* 8 NY2d 384, 387).

■ In any event, we find that the evidence overwhelmingly demonstrated that Gramaglia was an accessory with the other defendants. Gramaglia admitted that he directed Giammaresi to cut off the Long auto and that he and Atti together pulled Long from his auto. In addition, there was evidence that Gramaglia restrained Barden from aiding Long while the others beat him. Given this evidence of concerted action, there is no significant probability that the jury would have found that Gramaglia was acting independently and not as an accessory. Therefore, the error was harmless *(People v Crimmins, supra).*

We have examined Gramaglia's remaining contentions and found them to be without merit. Accordingly, the judgment should be affirmed.

CARDAMONE, J. P., HANCOCK, JR., SCHNEPP and CALLAHAN, JJ., concur.

Judgment unanimously affirmed.