■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD W. FLAYHART and BEATRICE M. FLAYHART, Appellants.—Kane, J. Appeals from two judgments of the County Court of St. Lawrence County (Nicandri, J.), rendered May 21, 1986, upon a verdict convicting defendants of the crime of criminally negligent homicide.

Defendants, Richard W. Flayhart (hereinafter Richard) and Beatrice M. Flayhart (hereinafter Beatrice), are, respectively, the brother and sister-in-law of decedent, Terrance Flayhart (hereinafter Terry), who was a resident of their household and 36 years of age at the time of his death on June 17, 1985. Terry was mentally retarded and afflicted with cerebral palsy, epilepsy and other related maladies, to the extent that he was totally dependent on others for food, shelter and medical care. Because of damage to the right side of his brain, he also suffered from atrophy of the left side of his body. The medical care he required included the administering of prescribed antiseizure drugs on a continuous basis to control periodic epileptic seizures. Terry had resided with his father in Pennsylvania until his father's untimely death in September 1976, at which time Terry was removed to Richard's home at Star Lake, St. Lawrence County, where, except for a brief stay at an adult boarding home and four months at St. Lawrence Psychiatric Center, he remained until his death. Following his arrival in St. Lawrence County, and for a period of approximately two years thereafter, Terry was enrolled in the daily workshop program of the local chapter of the New York State Association for Retarded Children (hereinafter ARC), until his withdrawal by Richard following occasions of disruptive behavior by Terry at the workshop and considerable disagree-

ment with representatives of ARC as to future programs for and the current care of Terry.

The record demonstrates that between May 1977 and March 1983, Terry was seen frequently by a doctor in Star Lake, but that he did not appear for his scheduled appointment in September 1983. There is no evidence that Terry received any medical attention the last two years of his life. Following his death on June 17, 1985, his body was found to be emaciated and atrophied, with large bedsores on each hip. His weight was 75 pounds. An autopsy found the cause of death to be malnutrition and inflammation of the lungs with a superimposed pneumonia. There was additional evidence that the inflammation of the lungs was caused by aspiration of food from the stomach which had been ingested approximately six hours prior to death. Evidence of the presence of antiseizure medication was also found in his system. Tape-recorded interviews with Richard and Beatrice by three members of the St. Lawrence County Sheriff's Department, after appropriate *Miranda* warnings, were conducted two days after his death, which disclosed the type of care and attention afforded Terry by Richard and Beatrice, together with the existence of a trust fund for the care and support of Terry established by his father in the principal sum of approximately $122,000, which was to pass to Richard upon the death of Terry. Thereafter, they were jointly indicted for manslaughter in the second degree and criminally negligent homicide. After a joint trial before a jury, they were acquitted of the former charge but convicted of the latter.

In our view, their convictions should be affirmed. Although numerous legal issues are raised seeking reversal, we find them to be without merit and the evidence in its entirety sufficient to sustain the People's burden of proof of guilt beyond a reasonable doubt. That evidence, presented by the prosecution, established that Terry did not see a doctor the last two years of his life, did not receive adequate nutrition, was left without effective care or attention for up to three weeks at a time and, prior to his death, weighed 75 pounds as compared to a high of 148 pounds in May 1979. Other evidence clearly demonstrated incredible neglect of one entirely dependent on others for his care and support. Where, as here, the legal sufficiency of all that evidence is an issue on appeal, we can assume the jury credited the prosecution's witnesses whenever they were contradicted, and we can view the record presented in a light favorable to the prosecution *(see, People v*

*Bleakley,* 69 NY2d 490, 495; *People v Benzinger,* 36 NY2d 29, 32).

We also reject the legal argument that the "acting in concert" theory may not be applied in a case charging reckless or negligent conduct because one may not "intentionally aid" someone to fail to perceive a substantial and unjustifiable risk of death *(see,* Penal Law § 15.05 [4]; § 20.00). "[A]ccessorial liability [may] attach for criminally negligent homicide provided that each accessory shares the requisite culpable mental state for that crime and intentionally aids another in its commission" *(People v Gramaglia,* 71 AD2d 441, 444; *see, People v Lieberman,* 3 NY2d 649, 653; *People v Torres,* 111 AD2d 939, 940, *lv denied* 66 NY2d 768; *People v Abbott,* 84 AD2d 11, 15; *People v Robbins,* 83 AD2d 271, 276). Here, the jury was presented with that necessary evidence and received it under proper instructions from County Court in a charge that was clear and complete in all respects. There was no error committed by the court in proceeding with a joint trial, permitting evidence of the trust fund and the conservatorship of Terry's property on the issue of motive *(see, People v Stanfield,* 36 NY2d 467, 472), or in its discretionary ruling postponing submitting the rather grim and unpleasant photographs of the deceased to the jury until it retired for its deliberations *(see, People v Pobliner,* 32 NY2d 356, 369, *cert denied* 416 US 905).

Finally, under all the circumstances of this case, we cannot say that the 1⅓-to-4-year prison sentence imposed, although the maximum allowable, was harsh or excessive.

Judgments affirmed. Mahoney, P. J., Kane, Levine and Harvey, JJ., concur.