■ The People of the State of New York, Appellant, v Noel Goddard, Also Known as Noel Bagot, Respondent. [614 NYS2d 480] —Weiss, J. Appeal from an order of County Court of Otsego County (Nydam, J.), entered October 21, 1993, which granted defendant's motion to dismiss the indictment.

Four-year-old Akiem Davis was mentally retarded, unable to ambulate, blind, unable to communicate in a general sense and suffered from cerebral palsy and diabetes insipidus. Akiem required a daily injection of a drug called DDAVP without which he was at grave risk of dehydration. He lived on a

---

liquid diet. In late May 1993, Akiem and his family moved from New York City to the City of Oneonta, Otsego County where, at the invitation of Sharon Augustine, they temporarily moved into the apartment shared by Augustine and her boyfriend, defendant.

On July 1, 1993 Marcia Simmonds, Akiem's mother, made arrangements with Augustine to care for Akiem and his six-year-old sister, Angel, from Friday afternoon on July 2, 1993 until Monday, July 5, 1993. Augustine told Simmonds that she would be working on July 3, 1993 and that defendant would be with the children. The preceding year defendant had on four to six occasions babysat for the two children for a brief time while he was in New York City, but on each occasion Simmonds left Akiem clean, changed and fed so that defendant would only have to "keep an eye on him". Simmonds explained to Augustine, who was a nursing assistant with formal training, how to care for Akiem and give him his daily injection of DDAVP. When Simmonds left Oneonta on July 2, 1993, Akiem had been fed and given his daily injection.

Simmonds did not return on July 5, 1993 and when Augustine went to work at 3:00 P.M., she left defendant with Akiem and Angel. At 6:00 P.M., defendant changed Akiem and gave him a bottle. Thereafter defendant did not directly attend to Akiem but did have Angel look in on him. Augustine came home after work, freshened up and went out again. When she returned at approximately 2:00 A.M., she discovered Akiem's lifeless body. The temperature in the apartment was 82 degrees and except for one injection on Saturday, July 3, 1993 Augustine neglected to give Akiem any of his DDAVP injections.

Upon this proof a Grand Jury indicted defendant for criminally negligent homicide and endangering the welfare of a child. County Court reviewed the Grand Jury minutes and granted defendant's motion to dismiss the indictment. The People have appealed.

Contrary to the People's contention, the evidence before the Grand Jury fails to suggest that defendant intended or agreed to assume any obligations associated with parenthood of Akiem during any of the time periods involved. Moreover, the evidence as presented fails to demonstrate that defendant had anything more than a general awareness of Akiem's medical problems. Nor does the record show that defendant was aware that Augustine had failed to give Akiem his DDAVP for two successive days or knew of the need and purpose of DDAVP

and the resultant complications if injections were not administered, or that he was aware of the symptoms of and Akiem's susceptibility to dehydration.

Criminally negligent homicide involves the failure to perceive a risk in a situation where the offender has a legal duty of awareness *(People v Haney,* 30 NY2d 328, 334). There are situations where a failure to act may constitute a breach of a legal duty *(see, People v Lilly,* 71 AD2d 393, 402 [Simons, J., dissenting]). What amounts to criminally negligent homicide depends upon the circumstances of the particular conduct. The acts, or the failure to act, which cause the death must involve a substantial and unjustifiable risk, and the failure to perceive it must be such as to constitute a gross deviation from the standard of care which the reasonable person would have observed under the same circumstances *(People v Haney, supra,* at 335).

The evidence establishes that defendant was no more than a casual babysitter. The doctrine of in loco parentis which requires that an individual intend to assume all the obligations of parenthood before he will be held to those obligations is absent here *(see, People v Lilly,* 71 AD2d 393, 394, *supra; see also, Rutkowski v Wasko,* 286 App Div 327). A babysitter undertaking responsibility for a helpless child does have an affirmative duty to provide adequate care *(see, People v Wong,* 81 NY2d 600, 607-608) and there are situations where the need to seek prompt medical attention would be obvious to the reasonable person *(People v Steinberg,* 79 NY2d 673, 681). However, here there was no evidence before the Grand Jury from which it could be inferred that a reasonable person providing afternoon-evening babysitting for a bedridden child would have been aware that the child had not been given his medication and was suffering from life threatening dehydration *(see, People v Wong, supra,* at 609).

County Court correctly determined that Akiem's medical condition required specialized knowledge and that defendant was not in the class of individuals either possessing or under a legal obligation to procure such knowledge *(see, People v Myers,* 201 AD2d 855). The significance of Akiem's circumstances were not " ' "apparent to one who shares the community's general sense of right and wrong" ' " *(People v Haney, supra,* at 335, quoting Model Penal Code, Tent Draft No. 9, § 201.4, at 53 [1959], citing Hart, *The Aims of the Criminal Law,* 23 Law & Contemp Prob 401, 417). Similarly, there is no evidence that defendant knowingly acted in a manner likely to be injurious to the physical welfare of Akiem *(see, People v*

*Spadaccini,* 124 AD2d 859). We decline to accept, and the Grand Jury minutes fail to support, the prosecution's comparison of defendant's babysitting with the two-year seclusion in *People v Flayhart* (136 AD2d 767, *affd* 72 NY2d 737).

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the order is affirmed.