[678 NYS2d 6]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LISA CARROLL, Respondent.

First Department, July 30, 1998

APPEARANCES OF COUNSEL

*Mary C. Farrington* of counsel (*Norman Barclay* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Richard Joselson* of counsel (*Steven R. Berko* on the brief; *Daniel L. Greenberg,* attorney), for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

At 11:00 P.M. on August 16, 1996, an ambulance brought three-year-old Shanaya Jones, her father, Carl Jones, and her "stepmother", defendant Lisa Carroll, to the emergency room at Columbia Presbyterian Medical Center. The child was not breathing, she had no pulse and her body was covered with bruises. Efforts to revive her were unsuccessful, and she was pronounced dead. Defendant and Jones reported that she had appeared ill just before they called for the ambulance. An autopsy revealed that Shanaya's death had been caused by injuries sustained in beatings that had probably occurred at least two days before her death.

After the autopsy results were disclosed to defendant and Jones, Jones admitted that, over the course of several days, he had brutally punched his daughter in the back, pushed her several times, causing her to fall, and had repeatedly thrown her onto her bed with such force that she had hit an adjacent wall. Defendant, who had considered herself Shanaya's "mother" and primary caretaker when the child stayed at the home she shared with Jones, admitted that she had witnessed most of the violence committed against Shanaya, but had not sought medical assistance for the child. Defendant was charged with endangering the welfare of a child. Carl Jones was charged with two counts of murder in the second degree, one count of manslaughter in the first degree and endangering the welfare of a child.

Prior to trial, defendant asked the court to inspect the Grand Jury minutes and to dismiss the indictment on the ground that the evidence before the Grand Jury had been insufficient to prove that she had a legal duty to care for the child. Upon inspection of the Grand Jury minutes, the trial court, in a decision dated December 17, 1996, dismissed the indictment, finding "that the evidence is insufficient to support the charge of endangering the welfare of a child that has been brought against defendant Carroll".

The People's theory behind the indictment rests on the assumption that defendant had some type of legal duty to the decedent. However, it is uncontested that defendant was not the biological parent of the deceased. Nor did she have any legal rights vis-á-vis the child. The mere fact that she resided in the same home as the child during a prolonged visitation period does not necessarily alter this relationship or mean she had taken a legal duty to the child, that is, "assumed all of the responsibilities incident to parenthood." (*People v Myers*, 201 AD2d 855, 856; *see also, People v Goddard*, 206 AD2d 653.) Absent a showing that defendant had a legal duty to protect the deceased, she cannot be held criminally responsible for failing to take protective action.

Evidence legally sufficient to support an indictment is defined by CPL 70.10 (1) as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (*People v Deegan*, 69 NY2d 976, 978-979). To meet that test, the evidence, when unexplained, uncontradicted, and viewed in the light most favorable to the People, need only reasonably support an inference that the defendant committed the crime charged (*People v Swamp*, 84 NY2d 725; *People v Redmond*, 183 AD2d 490, *lv denied* 80 NY2d 933; *People v Fields*, 179 AD2d 458).

Penal Law § 260.10 (2) provides, in pertinent part:

"A person is guilty of endangering the welfare of a child when * * *

"2. Being a parent, guardian *or other person legally charged with the care or custody of a child less than eighteen years old*, he fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming an 'abused child' [or] a 'neglected child' * * * as those terms are defined in article[ ] ten * * * of the family court act." (Emphasis added.)

The sole issue on appeal is whether the People presented a prima facie case to the Grand Jury that defendant had been "legally charged with the care or custody" of her three-year-old "stepchild", within the meaning of Penal Law § 260.10 (2), by showing that the child had been repeatedly abused in the home defendant shared with the child's father and that defendant, who considered herself the child's primary caretaker and mother at that time, took no action.

Penal Law § 260.10 (2), which defines the crime for which defendant was charged, was designed, among other things, to establish "the duty of one parent to protect the child from the

other parent." (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 260.10, at 348.) Pursuant to section 1012 (g) of the Family Court Act, a " '[p]erson legally responsible' " for a child's care includes not only the child's biological or adoptive parents or legal guardians, but the "child's custodian, guardian [or] any other person responsible for the child's care at the relevant time."

While the Penal Law contains no separate definition of a "person legally responsible" for a child's care, the trial court in finding that the Family Court Act's definition did not apply to criminal proceedings, was essentially finding that there is no statutory definition at all for use in criminal proceedings, even though one exists somewhere in the law.

The evidence before the Grand Jury, which showed that defendant was the child's stepmother and took care of the child when she visited, was sufficient to show that defendant was "legally responsible" for Shanaya's care during the time she was fatally abused, and, thus, that defendant had a legal duty of care for the child.

Moreover, even if the Family Court definition of "legally responsible" were found not to apply to the crime of endangering the welfare of a child as defined in the Penal Law, the evidence here would still support an inference that defendant was criminally liable, because she stood in loco parentis at the time of the crime. A person stands in loco parentis when he or she has assumed the responsibilities of a parent. The assumption of that role is not dependent upon the existence of a blood or legal relationship, but "is largely a question of intention which should not lightly or hastily be inferred, but which may be shown *by the acts and declarations of the person*" (*Rutkowski v Wasko*, 286 App Div 327, 331 [emphasis added]).

Defendant's own statement to the arresting detective, that she had been Shanaya's primary caretaker and that she had considered herself to be Shanaya's "mother" during the child's visits, established that she had indeed assumed the role of a parent at the relevant time.

The trial court dismissed the indictment upon constraint of *People v Myers* (201 AD2d 855, *supra*) and *People v Goddard* (206 AD2d 653). However, those Third Department cases refused to impose liability under the child endangerment statutes against the live-in boyfriend of the child's mother in *Myers*, and the boyfriend of a woman who was babysitting for a severely disabled child in *Goddard*. In each case the Court found that the defendant had not assumed responsibility for the child's welfare.

The Court in *Myers* found it decisive that, although the defendant lived in the home, contributed to household expenses and had been included in the household as reported for food stamp purposes, there was no evidence that he "considered the children to be his responsibility or acted in such a way as to demonstrate that he entertained such an attitude (*see, Rutkowski v Wasko, supra,* at 331)" (*People v Myers, supra,* at 857). Here, by contrast, there was evidence before the Grand Jury that defendant assumed the obligations of parenthood and considered herself to be Shanaya's mother when the child came to stay in her home.

The facts in *Goddard* are similarly distinguishable. In that case, a severely disabled child was placed in the care of a friend of his mother. The friend, in turn, left the child for a portion of the time in the care of her boyfriend, the defendant, who was not aware that the child had been deprived of his life-sustaining medication and was suffering from life-threatening dehydration. There, the Third Department affirmed the trial court's determination that the child's "medical condition required specialized knowledge and that defendant was not in the class of individuals either possessing or under a legal obligation to procure such knowledge" (*supra,* at 655, citing *People v Myers, supra*).

Accordingly, the order of the Supreme Court, New York County (Carol Berkman, J.), entered December 18, 1996, which granted defendant's motion to dismiss the indictment charging defendant with endangering the welfare of a child, should be reversed, on the law, defendant's motion denied, the indictment reinstated, and the matter remanded for further proceedings.

MILONAS, J. P., TOM and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered December 18, 1996, reversed, on the law, defendant's motion to dismiss the indictment charging her with endangering the welfare of a child denied, the indictment reinstated, and the matter remanded for further proceedings.