*566
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Over the course of several days, three-year-old Shanaya Jones was beaten to death by her father. Defendant, the child’s stepmother, witnessed most of the violence, but did not alert the authorities or summon medical assistance until Shanaya was dead. The issue before us is whether the Grand Jury that indicted defendant for endangering the welfare of a child had sufficient evidence that defendant was “legally charged” with the care of Shanaya (Penal Law § 260.10 [2]). We conclude that it did, because the evidence supported an inference that defendant was acting as the functional equivalent of Shanaya’s parent at the relevant time.
 

 According to evidence presented to the Grand Jury, Shanaya Jones on August 6, 1996 began an extended visit with her father and defendant, his wife. Defendant described herself, during Shanaya’s visits, as the child’s “mother,” “stepmother” and “primary caretaker.” Between August 14 and 16, Shanaya’s father repeatedly punched the child, threw her into a wall and pushed her onto the floor, apparently because she would not eat. While defendant witnessed her husband inflict most of these beatings and was aware that the child had stopped eating, she did not seek medical attention until late in the evening of August 16, when Shanaya was brought by ambulance to a hospital emergency room. By the time the child arrived at the hospital, she had stopped breathing and had no pulse. After attempts to revive her were unsuccessful, she was pronounced dead.
 

 An autopsy revealed that the cause of death was physical abuse sustained while at defendant’s apartment. Shanaya’s body was covered with bruises, lacerations, abrasions and hemorrhages. Several of her ribs were fractured and a lung was punctured. The Medical Examiner concluded that the injuries were days old, and that many of them would have been very painful, causing the child to scream and cry. The Examiner also determined that Shanaya was starved and dehydrated.
 

 Defendant was charged with endangering , the welfare of a child (Penal Law § 260.10 [2]). Prior to trial, she moved to dismiss the indictment. Supreme Court granted the motion on the ground that there was insufficient evidence that defendant was “legally charged” — the statutory standard — with the care or custody of Shanaya. The Appellate Division reversed for two
 
 *567
 
 reasons (244 AD2d 104). First, the court concluded that because defendant was “legally responsible” for Shanaya’s care under section 1012 (g) of the Family Court Act, she was also “legally charged” with the child’s care under Penal Law § 260.10 (2). Second, the court held that defendant was criminally liable because she stood in loco parentis at the time of the crime. We now affirm, solely on the first ground.
 

 Pursuant to Penal Law § 260.10 (2), “a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old” is guilty of endangering the welfare of a child if he or she “fails or refuses to exercise reasonable diligence in the control of such child to prevent [the child] from becoming an ‘abused child,’ a ‘neglected child,’ a ‘juvenile delinquent’ or a ‘person in need of supervision,’ ” as those terms are defined in the Family Court Act. One of the purposes of this statute is to establish “the duty of one parent to protect the child from the other parent” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 260.10, at 348).
 

 Defendant argues that the proof before the Grand Jury was insufficient to show that she was legally charged with the care or custody of Shanaya, emphasizing that she was not Shanaya’s biological mother, legal guardian or contractually hired caregiver. As for defendant’s own statements to police that she acted as Shanaya’s primary caretaker and mother during Shanaya’s visits, defendant argues that they were inadequate to create a duty because they did not indicate that she had assumed all of the obligations of motherhood on a permanent basis. Penal Law § 260.10 (2) specifically includes parents and guardians as people who are subject to prosecution. In effect, therefore, defendant argues that “other person legally charged with the care or custody of a child” is limited to people who have contracted to care for or who stand in loco parentis to a child. We conclude that the statutory term is not so narrowly confined.
 

 Because the Penal Law does not describe who constitutes a “person legally charged with the care or custody of a child,” defining this term falls to the courts. In discharging this responsibility, we are mindful of the statutory language, the legislative purpose and the Penal Law’s directive that its provisions should be “construed according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law § 5.00).
 

 
 *568
 
 In order to be “legally charged” with caring for a child, obviously a person must have a responsibility to that child based in law. While Penal Law § 260.10 (2) does not specify the circumstances giving rise to such a legal duty, the Family Court Act sets forth numerous duties toward children. Indeed, Penal Law § 260.10 (2) complements and supplements various Family Court proceedings in order to accomplish the mutual goal of protecting children from abuse and neglect
 
 (see,
 
 Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 260.10, at 348). To promote uniformity, Penal Law § 260.10 (2) specifically refers to the Family Court Act in order to define the terms “abused child,” “neglected child,” “juvenile delinquent” and “person in need of supervision.”
 

 The Family Court Act does not use the term “person legally charged,” but it defines the similar term “person legally responsible” to include “the child’s custodian, guardian [or] any other person responsible for the child’s care at the relevant time” (Family Ct Act § 1012 [g]). The Family Court Act further specifies that a “custodian” “may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.” This definition was specifically meant to include “paramours” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 373).
 

 Pursuant to Family Court Act § 1012 (a), a person who is “legally responsible” has a duty to care for a child, and can be named as a respondent in Family Court proceedings for abuse or neglect. In fact, the terms “abused child” and “neglected child,” which are incorporated by reference into Penal Law § 260.10 (2), are defined with reference to the actions of a parent “or other person legally responsible” (Family Ct Act § 1012 [e], [f]). Because a person who is “legally responsible” for a child under article 10 of the Family Court Act is obligated to prevent a child in one’s care from becoming abused or neglected, such a person is necessarily “legally charged” with the child’s care.
 

 In determining whether the evidence before the Grand Jury was legally sufficient to indict defendant, the court “must consider whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted — and deferring all questions as to the weight or quality of the evidence — would warrant conviction”
 
 (People v Swamp,
 
 84 NY2d 725, 730;
 
 see also,
 
 CPL 70.10 [1]). Using this standard, the evidence before
 
 *569
 
 the Grand Jury established a prima facie case that defendant was legally responsible for Shanaya’s care under Family Court Act § 1012 (g), and therefore legally charged with Shanaya’s care under Penal Law § 260.10 (2). Defendant’s arguments regarding the actual extent of her involvement with the child might be issues for trial, but are not grounds for dismissal of the indictment.
 

 In
 
 Matter of Yolanda D.
 
 (88 NY2d 790, 796), this Court held that a person who “acts as the functional equivalent of a parent in a familial or household setting” is a “person legally responsible” for a child’s care. By expanding the bounds of who is legally responsible for children beyond the realm of the traditional family and legal guardian, this standard takes into account the modern-day reality that parenting functions are not always performed by a parent. As the case before us illustrates, a person who is not a child’s biological parent can play a significant role in rearing the child. Defendant acknowledged that whenever Shanaya visited the apartment she shared with Shanaya’s father, she functioned as the child’s mother. At the time of Shanaya’s death, the three year old had spent 10 consecutive days and nights at defendant’s apartment.
 

 It would be incongruous for biological parents and guardians, but not a stepmother who assumes the primary caretaking role during the child’s visits, to be liable for endangering the welfare of a child. Indeed, in
 
 People v Wong
 
 (81 NY2d 600, 607-608), this Court indicated that a paid full-time caretaker can be criminally liable for failing to seek emergency medical aid for a seriously injured child. Thus, as defendant concedes, had the two people present during the beating of Shanaya been custodial caretakers hired by the child’s father, their failure to secure medical care for Shanaya could have been the basis of criminal charges. The Legislature could not possibly have intended a hired caretaker to be liable for endangering the welfare of a child, but not a stepmother who functions in that role during the child’s extended visits.
 

 Defendant insists that she was not legally charged with Shanaya’s care because she could not have been in loco parentis to the child absent a showing that she intended to support and care for her on a permanent basis
 
 (Johnson v Jamaica Hosp.,
 
 62 NY2d 523, 529). It is unnecessary for the People to prove that defendant assumed parental duties on a full-time basis, however, because “whether a person stands in loco parentis to a child is a separate inquiry from whether such a
 
 *570
 
 person acts as the functional equivalent of a parent”
 
 (Matter of Yolanda D., supra,
 
 88 NY2d, at 796). A person may act as the functional equivalent of a parent even though that person assumes only temporary care or custody of the child, so long as the circumstances of the case otherwise warrant such a determination, as they appear to here. This conclusion comports with the requirement that a “person legally responsible” need only be responsible for the child’s care “at the relevant time” (Family Ct Act § 1012 [g]).
 

 Defendant’s reliance on
 
 People v Myers
 
 (201 AD2d 855) and
 
 People v Goddard
 
 (206 AD2d 653) is misplaced. In
 
 Myers,
 
 “no evidence was presented that defendant, who did not characterize himself as the children’s father * * * considered the children to be his responsibility or acted in such a way as to demonstrate that he entertained such an attitude”
 
 (People v Myers, supra,
 
 201 AD2d, at 857). Similarly, the evidence in
 
 Goddard
 
 established that the defendant “was no more than a casual babysitter” who never “intended or agreed to assume any obligations associated with parenthood of [the decedent] during any of the time periods involved”
 
 (People v Goddard, supra,
 
 206 AD2d, at 654-655).
 

 The evidence in those cases stands in sharp contrast to the evidence before the Grand Jury in this case. Viewed most favorably to the People, that evidence, if unexplained and uncontradicted, would warrant conviction of defendant for endangering the welfare of Shanaya Jones, and therefore was legally sufficient to support the indictment.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur; Judge Levine taking no part.
 

 Order affirmed.