■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TABATHA LYNN PINKOSKI, Respondent. [752 NYS2d 421] —Peters, J. Appeal from an order of the County Court of Cortland County (Avery, Jr., J.), entered June 12, 2001, which granted defendant's motion to dismiss the indictment.

In September 2000, defendant took photographs of her six-year-old daughter (hereinafter the victim) posing in various stages of undress, while her five-year-old son and seven-year-old daughter were present. As relevant here, the photographs depict the victim lying on a bed with her raised buttocks exposed, squatting cross-legged on the floor with her bare buttocks exposed, standing with her shorts pulled down and her genitals exposed, pulling her shirt up with her bare chest exposed, and squatting with her buttocks exposed as an adult's hands spread her buttocks apart. These photographs and their negatives were the basis of a 19-count indictment handed down in March 2001. The indictment charges defendant with five counts of using a child in a sexual performance (*see* Penal Law § 263.05), five counts of promoting a sexual performance by a

child (*see* Penal Law § 263.15), five counts of possession of a sexual performance by a child (*see* Penal Law § 263.16), one count of sexual abuse in the first degree (*see* Penal Law § 130.65 [3]) and three counts of endangering the welfare of a child (*see* Penal Law § 260.10).

Both testimonial and documentary evidence was presented to the grand jury. An employee of the Wal-Mart Photo Center testified that during his development of the film, he discovered the photographs of a partially clad young girl "posing for the camera." He reported the photographs to the store manager who promptly called the police. The police confiscated only the subject photographs; the remaining photographs and all the negatives were returned.

William Carpenter, a detective with the City of Cortland Police Department in Cortland County, testified that he met defendant at the children's elementary school. That meeting prompted an accompanied retrieval of the negatives from defendant's home and her later interview at the police department. When first confronted with these photographs, defendant expressed disgust and shock, denying any involvement. However, after a further interview, she provided a written statement in which she admitted that she took the photographs, but explained that the activity was unplanned—she had a camera in her hand when the victim jokingly suggested, "do you want to see my butt." While laughing, the victim laid on defendant's bed and then pulled down her shorts and underwear exposing her buttocks; defendant took a photograph. The victim then got up off the bed and squatted on the floor cross-legged while still partially clothed; defendant took a photograph. Once dressed, the victim inquired about the differences between boys and girls as discussed in her school sex education program called Little Bear,[1] and then pulled down her shorts and underwear; defendant "accidentally took a photograph of [the victim's] vagina." With the victim thereafter "ask[ing] * * * about her butt," defendant again took a photograph, not realizing that the camera was on, when the victim pulled her butt cheeks apart with her hands. Concluding by pulling up her shorts, the victim then lifted up the front of her shirt showing her bare chest; defendant took another photograph. In her statement, defendant admitted to knowing that both her five-year-old son and seven-year-old daughter were present in the bedroom while the photographs were taken and, watching from the hallway, was her boyfriend, Henry

---

1. Investigation by Carpenter revealed that there was no "Little Bear" program at the children's school or in any school in the district.

Randall. Clearly aware of her inappropriate conduct, she admitted, "I know that I should not have taken photographs of [the victim] with her shorts pulled down exposing herself," and conceded, "I also probably should not have taken photographs while my other children were in the bedroom watching."

After the police interviewed Randall, defendant's interview continued and her statement further evolved, now disclosing that she had not been entirely truthful. Pertaining to the photograph separating the victim's buttocks, defendant explained that she "gave [her other] daughter the camera as [she] pulled [the victim's] butt cheeks apart to see if [she] had any bruises on her. As [she] was pulling [her] butt cheeks apart * * * [her other daughter] took a picture of [her] doing this * * *." Defendant then offered a new explanation for her conduct: "The reason I had [the victim] show her vagina and her butt to me was because I was trying to teach [her] about sex education. On this date I was trying to teach my kids what is right about sex and what is wrong about sex." Randall's testimony before the grand jury recounted how he accidentally stumbled upon this incident, expressing "shock" at defendant's behavior. He confirmed that the victim was not fully clothed when photographed and that defendant was the one who held the victim's "butt cheeks" apart.

At the conclusion of all testimony, the grand jury was provided with a description of the charges, the elements of the crimes, definitions of all relevant terms as set forth in Penal Law § 263.00, and the available affirmative defense. It was instructed on the applicable standard of proof and told to consider all 19 counts. After voting to return the full indictment, County Court granted defendant's motion to dismiss. The People appeal.

In assessing the proffer made to the grand jury, we view the evidence in the light most favorable to the People to determine whether this evidence " 'if unexplained and uncontradicted * * *would warrant conviction by a petit jury' " (*People v Jensen*, 86 NY2d 248, 251, quoting *People v Jennings*, 69 NY2d 103, 114). As long as the grand jury could have rationally drawn the inference of guilt, we must find the evidence legally sufficient (*see People v Carroll*, 93 NY2d 564, 568-569; *People v Canale*, 240 AD2d 839, 840).

Addressing the dismissal of those counts predicated upon photographs of the victim's buttocks and bare chest as not constituting a "lewd exhibition of the genitals" within the meaning of sexual conduct as defined in Penal Law

§ 263.00(3),[2] we can find no error. Generally, we will not supply, by implication, a provision in a statute when it is reasonable to believe that its absence was intended by the Legislature (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 74; *see Pajak v Pajak*, 56 NY2d 394, 397; *Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.*, 208 AD2d 91, 94, *affd* 87 NY2d 199). With a penal statute, it is further presumed that its terms are to "be construed according * * * [their] fair import * * * to promote justice and effect the objects of the law" (Penal Law § 5.00). Hence, where, as here, the Legislature has chosen to define the term "sexual conduct" four different ways in four separate sections of the Penal Law[3] and, in only two such sections is the term "buttocks" specifically included, the absence of such language in Penal Law § 263.00 (3) is dispositive. Yielding to the cautionary language from the US Supreme Court that "[t]he category of 'sexual conduct' proscribed must * * * be suitably limited and described" (*New York v Ferber*, 458 US 747, 764), we can find no basis upon which to supplement, by implication, the controlling provisions of this statute. For all of these reasons, we must affirm the dismissal of those counts.

We are of a different view with regard to County Court's dismissal of those counts of the indictment premised upon the photograph of the victim's genitalia, due to the insufficiency of the grand jury instructions. While it might have been preferable for the People to have instructed the grand jury as to the generally accepted definitions of the term "lewd," the word is not so arcane as to escape the understanding of the average juror. Lewd has been defined as "characterized by lust, obscene or indecent" (The Random House Dictionary of the English Language 825 [unabridged ed 1966]), "showing or intended to excite lust or sexual desire, esp. in an offensive way" (Web-

---

**2.** Penal Law § 263.00 (3) defines sexual conduct as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual beastiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals."

**3.** In Penal Law article 130, concerning sex offenses, the term "sexual conduct" is defined as "sexual intercourse, deviate sexual intercourse, aggravated sexual contact, or sexual contact" (Penal Law § 130.00 [10]). Penal Law article 235, concerning obscenity and related offenses, defines "sexual conduct" as "acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast" (Penal Law § 235.20 [3]). Penal Law article 245, concerning offenses against public sensibilities, defines "sexual conduct" as "an act of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast" (Penal Law § 245.10 [2]).

ster's New World College Dictionary 825 [4th ed 1999]) and "offensive to accepted standards of decency" (Roget's II The New Thesaurus 658 [1986]). The photograph in question depicts a frontal view of the victim with her pants down to her ankles and with her left hand on her stomach and her right hand on her groin area in close proximity to her genitalia, as if she were about to fondle herself or entice the viewer to do so. Such depiction is far from that of a family photograph of a nude child either lying on a blanket or bathing, and assuredly could not be considered an artistic rendering of a nude. To the contrary, a grand jury could well conclude, as it did here, that the photograph was sexual in nature, offensive to accepted standards of decency and intended to appeal to the prurient interests of the pedophile viewer.

We also find that the charge of sexual abuse in the first degree, grounded upon defendant's spreading of the child's buttocks, must be reinstated. In light of defendant's inconsistent and disingenuous statements explaining the basis for the photographs, the grand jury could properly infer the sexual gratification element from her conduct (*see Matter of Keisha McL.*, 261 AD2d 341; *Matter of Thomas N.*, 229 AD2d 666, 668; *see also People v Watson*, 281 AD2d 691, 697, *lv denied* 96 NY2d 925; *People v Beecher*, 225 AD2d 943).

Finally addressing the remaining counts of the indictment alleging that defendant's conduct endangered the welfare of her children, her admissions conceding the inappropriate nature of her conduct wholly supports the grand jury's conclusion that she was aware that her conduct was harmful (*see People v Johnson*, 95 NY2d 368).

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, by reversing so much thereof as granted defendant's motion to dismiss counts 3, 8, 13, 16, 17, 18 and 19 of the indictment; motion denied to that extent and said counts reinstated; and, as so modified, affirmed. [*See* 188 Misc 2d 588.]