This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 94
The People &c.,
          Respondent,
      v.
Anthony Berry,
          Appellant.

          Barbara Zolot, for appellant.
          Grace Vee, for respondent.

FAHEY, J.:

          We hold that the evidence offered was legally

insufficient to support the conclusion that defendant

"permit[ted]" underage children to "enter or remain" in a place

of drug activity (Penal Law § 260.20 [1]).  To establish that a

defendant permitted a child to enter or remain in a particular

- 1 -

place, premises, or establishment, within the meaning of Penal Law § 260.20 (1), the People must show that the defendant had a relation either to the child or to the place, premises, or establishment, such that he or she could control whether the child entered or remained there.

## I.

On the morning that defendant was arrested, police officers executing a search warrant broke open the door of an apartment in Brooklyn and found the target of the warrant, TH, asleep in the living room with two of her children, a grandchild, and defendant. The children were nine years, five years, and six months old respectively. The police found loose crack cocaine on a cabinet shelf in the kitchen.

According to testimony given by one of the police officers at defendant's trial, defendant was sleeping in the same sofa bed as TH and the children. The officer testified that defendant said that his clothes were in one of the bedrooms, and that defendant was permitted to get dressed with clothes found in that room. When the police searched a different pair of jeans that was located next to the sofa bed, they found bags of crack cocaine and a key; because the police had battered down the front door, they could not tell whether the key matched the door.

Significantly, defendant had no legal relationship to TH's children or grandchild. He was not the father or a guardian of the children. TH's name was on the lease agreement for the

apartment. Defendant's name was not on the lease agreement, but appeared on a cable television bill addressed to him at the apartment.

TH and defendant were arrested and jointly charged not only with criminal possession of a controlled substance but also with three counts each of unlawfully dealing with a child in the first degree (Penal Law § 260.20 [1]). TH pleaded guilty to one count of criminal possession of a controlled substance in the third degree and one count of unlawfully dealing with a child in the first degree, and she was sentenced to five years' probation. Defendant proceeded to a jury trial.

With respect to the unlawfully dealing with a child charges, the People's theory at trial was that defendant permitted the children to remain in TH's apartment insofar as he did not call the police or "anybody" to report that children under 18 lived in the apartment.

TH testified for the defense. She described defendant as a trusted friend, but testified that he had no "authority" over the children and was never left alone with them. This testimony was uncontested by the People. No proof was offered by the People that defendant exercised any control over the children. TH also testified that defendant did not live in the apartment, that he had stayed overnight only a few times, and that he was sleeping on a mattress on the floor next to the sofa bed, not in that bed with her and the children.

The jury found defendant guilty of the three counts of unlawfully dealing with a child in the first degree, but acquitted him of the drug possession charges. Defendant moved to set aside the verdict under CPL 330.30 (1), contending that the evidence is legally insufficient because he was not the parent or guardian of the children and had no legal authority over them. The trial court denied the motion, concluding that there is proof that defendant permitted the children to remain on the premises, and ultimately sentenced defendant to three concurrent one-year jail terms.

The Appellate Division affirmed the trial court's judgment, noting that Penal Law § 260.20 (1) "does not require a defendant to have a legal responsibility for the care or custody of the child" (People v Berry, 122 AD3d 414, 415 [1st Dept 2014]). A Judge of this Court granted defendant leave to appeal (25 NY3d 987 [2015], and we now reverse.

II.

A person is guilty of the class A misdemeanor of unlawfully dealing with a child in the first degree under Penal Law § 260.20 (1) if he or she

> "knowingly permits a child less than eighteen
> years old to enter or remain in or upon a
> place, premises or establishment where sexual
> activity as defined by article one hundred
> thirty [Sex Offenses], two hundred thirty
> [Prostitution Offenses] or two hundred
> sixty-three of this chapter [Sexual
> Performance by a Child] or activity involving
> controlled substances as defined by article
> two hundred twenty of this chapter

[Controlled Substances Offenses] or involving marihuana as defined by article two hundred twenty-one of this chapter [Offenses Involving Marihuana] is maintained or conducted, and he knows or has reason to know that such activity is being maintained or conducted."

The statute was added with the revision of the Penal Law in New York in 1965.  Its predecessor was former Penal Law § 484 (2), which made it a misdemeanor to "admit[] to or allow[] to remain in any reputed house of prostitution or assignation, or in any place where opium or any preparation thereof is smoked, any child actually or apparently under the age of sixteen years." The 1965 statute provided that an individual is guilty of unlawfully dealing with a child if he or she "knowingly permits a child less than eighteen years old to enter or remain in a place where illicit sexual activity or illegal narcotics activity is maintained or conducted" (L 1965, ch 1030).

The statute was amended in 1992.  Instead of referring to "illicit sexual activity or illegal narcotics activity," the 1992 amendments provided cross-references to the statutes defining such prohibited sexual or narcotics activity (see L 1992, ch 362).  At the same time, the Legislature modified the statute to include a "premises" and an "establishment" among the venues where a child cannot be allowed "to enter or remain" if one of the proscribed types of activity occurs there (see id.).

In support of the 1992 amendments, the Assembly wrote that "[p]romoting the corruption of children is one of the most

abominable acts a person can commit.  The State has a responsibility to protect our children from those who exploit them for illicit purposes. . . .  This act would . . . clarify the definitions of those offenses punished by the section, making it easier to prosecute those individuals unlawfully dealing with a child" (Assembly Mem in Support of Legislation, Bill Jacket, L 1992, ch. 362, at 10).

### III.

Defendant contends that the evidence is legally insufficient to show that he possessed the "authority over either the children or the apartment" required to permit the children to remain in the apartment.  He does not contest that he knew or had reason to know that offenses involving controlled substances took place in the apartment.

First, defendant argues that the evidence does not establish that he had authority over the apartment.  To the extent defendant suggests that he could not be convicted of unlawfully dealing with a child in the absence of proof that he had the legal authority to determine who may enter the premises – a power that a house guest does not normally possess (see generally Minnesota v Olson, 495 US 91, 99 [1990]) – his contention relies on a false premise.  The People might demonstrate that a defendant permitted children to enter or remain in a place by showing that the defendant had legal authority over that place, for example as owner or lessee, and

allowed children in, but the statute does not require such a showing in every case.

Penal Law § 260.20 (1) does not specify any particular legal relation that a defendant must have to the premises. Notably, when the Legislature amended the statute in 1992 to cover any "premises" or "establishment" where prohibited sexual or narcotics activity is conducted, it did not take the opportunity to restrict the statute so as to apply only to defendants with legal authority over premises or establishments. Moreover, the statute may be read to apply to a parent who knowingly permits his or her child to enter a premises or establishment such as a crack house or brothel, regardless of whether the parent has any property interest in, or employment relation to, that premises or establishment. Someone without legal authority over a place may still permit a child to enter or remain in it, within the meaning of the statute. Defendant points to no basis in legislative history or policy for concluding that the statute is limited to defendants with legal authority over the premises. The plain language of the statute is purposely broad in scope. Consequently, we reject defendant's argument that the People were required to show that he had legal authority over the apartment.

Defendant's second contention is that the evidence does not establish that he had authority over the children, and therefore the prosecution did not show that defendant was in a

position to permit the children to remain upon the premises. Defendant suggests that he could be found guilty of unlawful dealing with a child in the first degree only if he had a legal duty to the children as their parent or guardian or under a doctrine of *in loco parentis* whereby he had assumed all the responsibilities incident to parenthood (see generally People v Munck, 92 AD3d 63, 70-71 [3d Dept 2011]).

It is clear from the plain language of the unlawfully dealing with a child statute, however, that Penal Law § 260.20 (1) is not limited in scope so as to apply only to a defendant who has a preexisting legal relation to the child in question. This is illustrated by a comparison between Penal Law § 260.20 (1) and Penal Law § 260.10 (2), one of the subdivisions of the endangering the welfare of a child statute, which specifies that the defendant must be "a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old," in order to be guilty under that statute (Penal Law § 260.10 [2]; see generally People v Carroll, 93 NY2d 564 [1999]; cf. Penal Law § 260.10 [1]). No similar, restrictive language appears in the unlawfully dealing with a child statute.

Moreover, the statute may be read to apply to a babysitter or other childcare provider who knowingly permits a child to enter a premises or establishment such as a crack house or brothel, even if that person has not undertaken all of the "responsibilities incident to parenthood" (Munck, 92 AD3d at 71

[internal quotation marks and citations omitted]).  For these reasons, defendant's *in loco parentis* theory does not harmonize with the statute under analysis here.[1]

Instead, we hold that to establish that a defendant permitted a child to enter or remain in a particular place, premises, or establishment, under Penal Law § 260.20 (1), the People must show that defendant's relation to the child <u>or</u> to the place, premises or establishment was of such a kind that defendant had some ability to control the child, so as to permit the child to enter or remain in the place in question.  Moreover, a mere ability to notify authorities does not constitute such

_____

[1]   Defendant supports his *in loco parentis* theory with the following argument.  Defendant observes that the prosecution's theory was that his <u>failure to act</u> constituted unlawfully dealing with a child, and he points out that an "omission" is defined by the Penal Law as "a failure to perform an act as to which a duty of performance is imposed by law" (Penal Law § 15.00 [3]).  Penal Law § 15.00 (3) recognizes the well-established principle that "[f]or criminal liability to be based upon a failure to act it must first be found that there is a duty to act — a legal duty and not simply a moral duty" (1 Wayne R. LaFave, Substantive Criminal Law § 6.2 [2d ed 2008]; <u>see generally</u> <u>Jones v United States</u>, 308 F2d 307, 310 [DC Cir 1962]).
  The People have no quarrel with defendant thus far, but insist that the <u>statute iself</u> expressly imposes the described legal duty (<u>see</u> LaFave at § 6.2).  By contrast, defendant suggests that he could be found guilty of unlawful dealing with a child in the first degree only if he had a legal duty to the children as their parent or guardian or under the doctrine of *in loco parentis* (<u>see</u> <u>id.</u> at § 6.2 [a] [1]).
  We need not decide in this appeal what theory of duty would underlie the successful prosecution of a defendant under Penal Law § 260.20 (1) for a failure to act.  We note only that, to the extent that the underlying duty to act is based upon a "personal relationship[]" (LaFave at § 6.2 [a] [1]) between a defendant and a child, there is no evidence of any such relationship here.

ability to control, or the statute might apply to anyone who comes into contact with a child entering or remaining in one of the proscribed places.

We reach this conclusion primarily on the basis of the conceptual relation between permission and control.  One who lacks the power to control another person cannot be charged with permitting him to act (see generally People v Bergerson, 17 NY2d 398, 403 [1966] [interpreting former Penal Law § 483 (2) (endangering the life or health of a child), which used the word "permits", to mean that defendant must have some degree of "control" over the child in order "to comply with and be subject to the statute"]).

The legislative history supports this analysis.  That history demonstrates that the statute was intended "to protect . . . children from those who exploit them for illicit purposes" (Assembly Mem in Support of Legislation, Bill Jacket, L 1992, ch. 362, at 10 [emphasis added]), indicating that the law targets those who are in a position to exert influence and control over children, as opposed to one who has knowledge that a child is remaining in a place where illegal narcotics or sexual activity is conducted but no authority to control the child.

IV.

Here, the People offered no evidence that supports the conclusion that defendant could prevent the children from remaining on the premises or, conversely, allow them to remain.

Viewed in the light most favorable to the prosecution, the evidence establishes at most that defendant had access to TH's apartment, and spent the night there regularly.  There is no evidence, however, that defendant ever fed, babysat, or otherwise cared for the children in any manner or had any authority over them.  Indeed, there is no evidence that defendant was ever alone with the children.  Moreover, the People do not deny that the apartment was the children's home – where they were present with TH, an adult who was responsible for their care – and the People propose no theory as to how, short of kidnapping, defendant might have directly prevented them from remaining there.

The sleeping arrangements at the time defendant was arrested are insufficient evidence of control.  They may be evidence of possible intimacy between TH and defendant, but they are not evidence of control over the children.  Nor can ability to control the children be deduced from the evidence suggesting that defendant may have left clothes at TH's apartment, had use of a key to the apartment, and given permission for his name to be used for cable television billing purposes.  Such factors may support the inference that defendant spent leisure time at TH's apartment, or even that, in some sense of the word, he temporarily "lived" there (dissenting op at 2), but they do not ground the conclusion that he had any ability to control the children's movements.

For these reasons, the evidence is legally insufficient

to establish that defendant permitted TH's children and grandchild to remain in the apartment within the meaning of Penal Law § 260.20 (1).

V.

Accordingly, the order of the Appellate Division should be reversed, the judgment vacated, and the indictment dismissed.

People v Anthony Berry

No. 94

PIGOTT, J. (dissenting):

Penal Law § 260.20 (1) is designed to protect children from being exposed to illicit drug and sexual activity in whatever setting such harmful activity may be taking place. The statute's language is quite broad. It makes it a misdemeanor for "any person" who "knowingly permits a child" to "enter or remain" in "a place, premises or establishment" where the illegal activities are taking place, and the person "knows or has reason to know" that such activity is being "maintained or conducted."

There is no dispute that defendant knew or had reason to know of the illegal drug activity happening in the apartment. Police found in plain view in the kitchen, on the second shelf of a cabinet which had no door, a plate with powdered cocaine. They also discovered crack cocaine packaged for sale in "dime bags" in a pair of jeans, as well as a significant amount of cash in a laundry bag. The mother, the lessee of the apartment, admitted at trial that she had been selling drugs out of the apartment.

The majority concludes, however, that the evidence was insufficient to support the conviction because the People presented "no evidence that defendant had control over the apartment" (maj. op. at 10 [emphasis added]). I disagree with

- 1 -

that conclusion.

The standard for reviewing the legal sufficiency of the evidence is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (People v Contes, 60 NY2d 620, 621 [1983]).

Here, the People proffered testimony that when police entered the apartment, they found defendant in bed in the living room with the mother and her three children. Defendant was wearing only a tee-shirt and boxer shorts. He told police that his clothes were in a drawer of a dresser in the bedroom. An officer found a key to the apartment in defendant's jeans. A cable bill for the apartment was in defendant's name.

Viewing this evidence in the light most favorable to the People[1], the jury could have reasonably rejected defendant's claim that he was homeless and concluded that defendant lived, or otherwise had control over, the apartment. Thus, in my view, the evidence established that defendant knowingly permitted three underage children to remain in an apartment where he knew, or had reason to know, that unlawful drug activity was being maintained.

---

[1]The majority takes issue with the fact that the People presented no evidence that defendant ever "fed, babysat or otherwise cared for the children" or that he was ever alone with them (maj. op. at 10). None of these factors, however, are necessary to the inquiry. Indeed, the majority recognizes that the People need only prove a relation to the child or to the premises (see id. at 9). Here, the People established the requisite relationship to the premises.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed, judgment vacated, and indictment dismissed. Opinion by Judge Fahey.  Judges Rivera, Abdus-Salaam and Stein concur.  Judge Pigott dissents in an opinion in which Chief Judge DiFiore and Judge Garcia concur.

Decided June 14, 2016