Matter of Sanchez v Jacobi Med. Ctr. (2020 NY Slip Op 01235)





Matter of Sanchez v Jacobi Med. Ctr.


2020 NY Slip Op 01235


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

528945

[*1]In the Matter of the Claim of Rurico Sanchez, Appellant,
v
Jacobi Medical Center, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: January 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Grey & Grey, LLP, Farmingdale (Robert E. Grey of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York City (Christine Conwell of counsel), for Jacobi Medical Center, respondent.
Letitia James, Attorney General, New York City (Donya Fernandez of counsel), for Workers' Compensation Board, respondent.



Mulvey, J.
Appeal from a decision of the Workers' Compensation Board, filed February 11, 2019, which ruled, among other things, that claimant's periods of temporary total disability following his permanent partial disability classification count towards the durational limit of his permanent partial disability award.
In May 2008, claimant, a housekeeper, was injured in a work-related accident, and his claim for workers' compensation benefits was later established for injuries to the neck, back, right shoulder and right leg. In a February 2012 reserved decision, a Workers' Compensation Law Judge (hereinafter WCLJ) classified claimant with a permanent partial disability and found that he had a loss of wage-earning capacity of 50%, entitling him to wage loss benefits of $211.56 per week not to exceed 300 weeks. In March 2014, claimant underwent a causally-related spinal surgery and, based on that change in his medical condition, filed a request for further action. Thereafter, a WCLJ reopened the case and awarded claimant temporary total disability benefits in the amount of $423.13 per week, retroactive to the date of surgery and continuing (see generally Workers' Compensation Law § 15 [2]). Subsequently, and in light of the differing medical opinions as to whether claimant was in fact totally disabled, a WCLJ later reduced claimant's benefit rate from the temporary total disability rate to a "tentative rate" of $211.56 per week. That tentative rate continued until December 2015, at which time claimant underwent a second spinal surgery. Following surgery, claimant again filed a request for further action, and a WCLJ awarded him retroactive temporary total disability benefits at $423.13 per week from the date of the second surgery and continuing until resolution of the differing medical opinions. That rate was later adjusted to tentative rates of $300 per week and then $317.35 per week.
In October 2017, the employer suspended payments to claimant based on the alleged exhaustion of the 300-week durational limit of claimant's permanent partial disability award. Claimant requested a hearing as to whether his payments had been improperly suspended, at which he argued that the period during which he was temporarily totally disabled should not count towards the 300-week cap for his permanent partial disability award and further asserted that he should be reclassified. In a November 2017 notice of decision, a WCLJ directed the employer to continue payments at the tentative rate of $317.35 per week and directed both sides to produce evidence of permanency to determine whether claimant should be reclassified as permanently totally disabled or permanently partially disabled to a more serious degree. The employer administratively appealed, maintaining that it properly suspended payment of claimant's benefits. In an August 2018 decision, a panel of the Workers' Compensation Board affirmed the WCLJ's decision, concluding that periods of temporary total disability should not be counted towards the capped number of weeks of a permanent partial disability award and further agreeing that claimant's two spinal surgeries warranted reconsideration of his classification, directing further development of the record to that end.
The employer then sought discretionary full Board review. The full Board granted the employer's application by, without explanation, merely rescinding the Board panel's August 2018 decision and remitting the matter to the Board panel for further consideration. In a February 2019 decision, the Board panel, expressly disavowing the Board's prior precedent, held that all periods during which a claimant receives awards subsequent to his or her permanent partial disability classification count towards his or her award's durational limit under Workers' Compensation Law § 15 (3) (w), which, here, was exhausted on or about November 8, 2017. The Board panel then modified the November 2017 decision and seven other prior decisions where either temporary total disability awards or "tentative" awards were made to claimant, reducing each of the benefit rates therein to $211.56 per week. Additionally, the Board panel concluded that claimant's request for reclassification was untimely because it was made after his permanent partial disability award had been exhausted. Claimant appeals.
Claimant first contends that the Board erred in holding that, following a permanent partial disability classification, a claimant continues to be permanently partially disabled for purposes of both calculation of the capped number of weeks under Workers' Compensation Law § 15 (3) (w) and the rate of awards — notwithstanding a WCLJ's reclassification of the claimant's condition to a temporary total disability. Because the issue presented is one of pure statutory interpretation, we need not accord deference to the Board's decision (see Matter of LaCroix v Syracuse Exec. Air Serv., Inc., 8 NY3d 348, 352-353 [2007]). Our analysis begins, as it must, with the text of the statute (see Matter of Mancini v Office of Children & Family Servs., 32 NY3d 521, 525 [2018]).
The Workers' Compensation Law provides compensation for four distinct classes of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability (see Workers' Compensation Law § 15 [1]-[3], [5]). In the case of permanent total disability, a claimant is awarded payment of a percentage of wages "during the continuance of such total disability" (Workers' Compensation Law § 15 [1]). Similarly, Workers' Compensation Law § 15 (2) provides that, in the case of temporary total disability, benefits are to be paid to a claimant "during the continuance thereof, except as otherwise provided in this chapter." Workers' Compensation Law § 15 (3), applicable to cases of permanent partial disability, provides for two types of awards: schedule loss of use awards for injuries to certain enumerated body members (see Workers' Compensation Law § 15 [3] [a]-[t]) and nonschedule awards for "all other cases of permanent partial disability" (Workers' Compensation Law § 15 [3] [w]). Compensation under Workers' Compensation Law § 15 (3) (a)-(t) is payable as one lump sum (see Workers' Compensation Law § 25 [1] [b]; see also L 2009, ch 351, § 1), whereas compensation under Workers' Compensation Law § 15 (3) (w) is "payable during the continuance of such permanent partial disability" subject, however, to the durational limits of that paragraph (Workers' Compensation Law § 15 [3] [w]) — limits set forth by the Legislature during comprehensive reform of the Workers' Compensation Law in 2007 (see L 2007, ch 6, § 4). Depending on the date of accident or disablement, the durational limits of Workers' Compensation Law § 15 (3) (w) may also apply to temporary partial disability awards under Workers' Compensation Law § 15 (5) where those awards extend beyond 130 weeks and where a permanent partial disability classification is later made (see Workers' Compensation Law § 15 [3] [w]).
Reading the statute as a whole, Workers' Compensation Law § 15 indicates that, at any particular time, a claimant can be classified under one, and only one, of the four categories of disability. Thus, even though a person may be medically diagnosed with a permanent partial disability and concurrently experience a temporary exacerbation of his or her medical impairment — for example, after surgery related to the disabling condition — rendering the person completely unable to work in the short term, the statute does not permit a claimant to be classified with both a permanent partial disability and a temporary total disability at the same time. Rather, if a claimant classified with a permanent partial disability experiences a setback or exacerbation that results in a reclassification of a temporary total disability, the earlier permanent partial disability classification is displaced, until further reclassification. Although the statute directs that, except in the case of protracted temporary total disability, a permanent partial disability award for a schedule loss of use includes or subsumes a preceding period of temporary total disability (see Workers' Compensation Law § 15 [4-a] [entitled "[p]rotracted temporary total disability in connection with permanent partial disability"]; L 1924, ch 500; see also Matter of Landgrebe v County of Westchester, 57 NY2d 1, 6 [1982]), the Legislature was silent regarding whether nonschedule awards for permanent partial disability should include preceding or intervening periods of temporary total disability. In our view, this silence in a similar circumstance, despite the Legislature having amended the statute in other ways extensively in 2007 and as recently as 2017 (see L 2017, ch 59, part NNN, subpart A, § 1; L 2007, ch 6, § 4), indicates a purposeful legislative choice to not include any periods of temporary total disability in nonschedule awards (see Matter of Lewandowski v New York State & Local Police & Fire Retirement Sys., 69 AD3d 1027, 1029 [2010]; see also Town of Concord v Duwe, 4 NY3d 870, 873-874 [2005]; People v Pinkoski, 300 AD2d 834, 837 [2002], lv denied 99 NY2d 631 [2003]; McKinney's Cons Laws of NY, Book 1, Statutes § 74).
We note that the WCLJs classified claimant as temporarily totally disabled following his two surgeries, which findings were supported by medical proof. Therefore, the Board did not comply with the statute when it counted the weeks during which claimant was classified as temporarily totally disabled against the cap for his nonschedule award for a permanent partial disability. Instead, the duration of his permanent partial disability nonschedule award (the running of the 300 weeks) should have been tolled while claimant was classified with a temporary total disability. Notably, until the decision on appeal, the Board previously held that a claimant's period of temporary total disability did not count against the cap of benefit weeks set forth in Workers' Compensation Law § 15 (3) (w) (see e.g. Employer: Kraft Foods, Inc., 2018 WL 4866440, *2-3, 2018 NY Wrk Comp LEXIS 9781, *5 [WCB No. G016 0350, Sept. 28, 2018] [noting that, "[w]hile [Workers' Compensation Law] § 15 (3) (w) is applicable due to the claimant's classification with a permanent partial disability, the claimant properly received benefits pursuant to [Workers' Compensation Law] § 15 (2) for her temporary total disability following the surgery to [her] neck, and," thus, "the claimant's 300-week cap under [Workers' Compensation Law] § 15 (3) (w) was tolled by the claimant's period of temporary total disability"]; Employer: Southampton Elementary School, 2018 WL 4493795, *3, 2018 NY Wrk Comp LEXIS 8097, *7-8 [WCB No. G002 6054, Sept. 6, 2018]; Employer: Heritage Centers, 2018 WL 2417391, *6, 2018 NY Wrk Comp LEXIS 4538, *16 [WCB No. 8080 5401, May 18, 2018]). Despite the Board's pronouncement regarding its change in position, its new analysis does not comport with the plain language of the statute.
According to that plain language, the durational benefit caps for nonschedule awards under Workers' Compensation Law § 15 (3) (w) apply to "all compensation payable under this paragraph" (emphasis added). However, benefits paid during a period of temporary total disability are payable under a separate paragraph, section 15 (2), and we are not persuaded by the Board's position that the "otherwise provided" language of Workers' Compensation Law § 15 (2) contemplates the durational limits of Workers' Compensation Law § 15 (3) (w) inasmuch as the former subdivision existed prior to the 2007 amendment of the latter (see Matter of Collins v Dukes Plumbing & Sewer Serv., Inc., 75 AD3d 697, 699 [2010], affd 17 NY3d 906 [2011], 18 NY3d 48 [2011]). Additionally, throughout Workers' Compensation Law § 15 are precise references to paragraphs and subdivisions thereof. Thus, it is much more reasonable to assume that, by using the word "chapter," the Legislature intended to direct attention to other sections of Workers' Compensation Law chapter 67, where there are indeed clear limitations on the payment of temporary total disability benefits (see e.g. Workers' Compensation Law § 12). Accordingly, temporary total disability benefits do not count towards the benefit caps for nonschedule awards under Workers' Compensation Law § 15 (3) (w).
Based on this record, we are unable to determine whether claimant has received the proper benefits. Immediately following each of claimant's surgeries, a WCLJ issued a decision classifying him with a temporary total disability and awarding benefits at a rate reflective of a total disability. However, for several later time periods, claimant was awarded benefits at various tentative rates, some of which were equal to the total disability rate, some equal to the nonschedule award rate and others in between those amounts. The Board has continuing jurisdiction to modify its prior decisions (see Workers' Compensation Law §§ 22, 123), and doing so does not violate claimant's rights, especially where the prior awards were labeled as tentative and it should have been obvious that a definite or final award would be issued at a later time. We therefore remit for the Board to determine claimant's classification during those periods for which he received tentative awards. For weeks when it is determined that claimant continued to have a temporary total disability, a nontentative rate should be set and the benefits cap on his nonschedule permanent partial disability award should be tolled; for weeks when it is determined that he had returned to his permanent partial disability status, he should receive the rate for his nonschedule award and those weeks should count toward his 300-week benefits cap.
Further, we agree with claimant that the Board's determination with respect to the timeliness of his request for reclassification was in error. The Board's unilateral position that a permanently partially disabled claimant must seek reclassification prior to the exhaustion of his or her permanent partial disability award runs in direct contravention to the plain language of Workers' Compensation Law § 15 (6-a), which provides that, subject to limitations not relevant here, "the [B]oard may, at any time, without regard to the date of accident, upon its own motion, or on application of any party in interest, reclassify a disability upon proof that there has been a change in condition." Accordingly, claimant must be provided an opportunity to seek reclassification. If, after further development of the record, claimant is reclassified, there would at that time be no bar to him receiving, for example, retroactive permanent total disability benefits from the date when he was found to have been totally disabled.
Garry, P.J., Egan Jr., Lynch and Reynolds Fitzgerald, JJ. concur.
ORDERED that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.