Matter of Hale v Rochester Tel. Corp. (2020 NY Slip Op 02516)





Matter of Hale v Rochester Tel. Corp.


2020 NY Slip Op 02516


Decided on April 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 30, 2020

529118

[*1]In the Matter of the Claim of Deborah Hale, Appellant,
v
Rochester Telephone Corporation et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: March 25, 2020

Before: Lynch, J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


Connors & Ferris, LLP, Rochester (Justin P. McCombs of counsel), for appellant.
Habberfield Kaszycki LLP, Buffalo (Matthew Yeates of counsel), for Rochester Telephone Corporation and another, respondents.



Mulvey, J.
Appeals (1) from a decision of the Workers' Compensation Board, filed October 19, 2018, which, among other things, denied claimant's request to modify a prior award, and (2) from a decision of said Board, filed January 4, 2019, which denied claimant's application for reconsideration and/or full Board review.
In August 1993, claimant suffered a work-related injury to her right knee. By decision filed December 22, 1995, a Workers' Compensation Law Judge (hereinafter WCLJ) classified claimant with a permanent partial disability and awarded her workers' compensation benefits. In October 2004, a WCLJ discharged the employer's workers' compensation carrier from liability and transferred liability to the Special Fund for Reopened Cases. By decision filed April 14, 2010, a WCLJ awarded claimant a 55% schedule loss of use (hereinafter SLU) of the right leg, with 50% apportioned to a separate noncompensable injury, entitling her to 79.2 weeks of benefits and an additional 46.2 weeks of benefits for a protracted healing period (hereinafter PHP). Claimant underwent causally-related surgeries to her right knee in 2012 and 2014.
Following a July 2017 decision in which the issue of an additional PHP was held in abeyance pending claimant's request to reopen the case, claimant made a request for further action in January 2018, for "an immediate hearing to address awards for the [PHP]." At a March 2018 hearing, claimant requested an additional PHP based upon the 2012 and 2014 surgeries.[FN1] By decision filed March 6, 2018, a WCLJ determined that claimant was entitled to an additional 154.4 weeks of PHP, subject to the prior 55% SLU award and related apportionment, based upon a change in her condition due to the 2012 and 2014 surgeries. Upon the Special Fund's application for review, the Workers' Compensation Board reversed, by decision filed October 19, 2018, denying claimant an additional PHP based upon its finding that claimant failed to demonstrate a change in her condition. Claimant filed an application for reconsideration and/or full Board review, which the Board denied. Claimant appeals from both decisions.
Initially, claimant requested an additional PHP based upon an alleged change in her condition following the 2012 and 2014 surgeries to her right knee, and the WCLJ and Board decisions, and claimant's related applications to the Board, do not reference any request for a reclassification of her disability. The Board thus erroneously applied Workers' Compensation Law § 15 (6-a) regarding the reclassification of a disability, as a PHP "is simply an incident of the schedule[] award[, which] is neither a classification nor disability in itself" (Matter of Guyette v Montgomery Ward & Co., 60 AD2d 52, 53-54 [1977]; see Workers' Compensation Law § 15 [6-a]).
Nevertheless, the Board has continuing jurisdiction over each case, and it may modify or change an award "as in its opinion may be just" (Workers' Compensation Law § 123). Further, "[u]pon its own motion or upon the application of any party in interest, on the ground of a change in conditions
. . ., the [B]oard may at any time . . . review any award, decision or order and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded" (Workers' Compensation Law § 22). Although the Board erroneously applied to claimant's request the statutory provision regarding the reclassification of a disability, such application similarly required a factual determination as to whether claimant established a change in her condition as part of its review of the evidence (see Workers' Compensation Law §§ 15 [6-a]; 22; Matter of Thomas v Crucible Materials Corp., 73 AD3d 1323, 1324 [2010]). The Board's factual determination in this regard will not be disturbed so long as it is supported by substantial record evidence (see Matter of Lanese v Anthem Health Servs., 165 AD3d 1373, 1374 [2018]; Matter of Cuva v State Ins. Fund, 144 AD3d 1362, 1364 [2016]).
Martin Gingras, claimant's treating physician, opined in a November 2009 report that claimant had a 55% SLU of the right leg and that she had "full extension [of the right knee], but her flexion [was] limited to 90 degrees." In April 2010, the WCLJ determined that claimant had, in fact, a 55% SLU of the right leg. In a December 2014 report, following the 2012 and 2014 surgeries to claimant's right knee, Gingras maintained that claimant had a 55% SLU to her right leg. His progress report from June 2016 found that claimant continued to have a 55% SLU due to "chronic pain."[FN2] Likewise, Gregory B. Shankman, a physician who conducted an independent medical examination in March 2017, opined that claimant's range of motion for flexion and extension of the right knee each measured at 10 to 90 degrees, and that she had a 55% SLU of the right leg "based on poor function." No evidence contradicting the 55% SLU assessment was provided. Moreover, Gingras' reference to claimant's chronic pain and Shankman's reference to claimant's poor function are not grounds for an SLU award under either of the guidelines relied upon (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 3.2, at 26-28 [2012]; New York State Medical Guidelines § [I] [B] [2], at 17-19 [1996]). Accordingly, the Board's determination that claimant failed to demonstrate a change in her condition warranting an additional PHP is supported by substantial evidence (see Matter of Bunnell v Sangerfield Inn, 35 AD3d 1021, 1022-1023 [2006]; see also Matter of Thomas v Crucible Materials Corp., 73 AD3d at 1325).
As to claimant's application for reconsideration and/or full Board review, she was required "to demonstrate that newly discovered evidence existed, that there had been a material change in condition, or that the Board improperly failed to consider the issues raised in the application for review in making its initial determination" (Matter of Castillo v Brown, 151 AD3d 1310, 1311 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of Singletary v Schiavone Constr. Co., 174 AD3d 1240, 1242 [2019]). As claimant failed to allege or set forth any newly discovered evidence, and the Board fully considered the issue of a change in condition, we find no abuse of discretion in the denial of claimant's application (see Matter of Washington v Human Tech., 170 AD3d 1349, 1351 [2019]; Matter of Karam v Rensselaer County Sheriff's Dept., 167 AD3d 1108, 1111 [2018], lv denied 33 NY3d 901 [2019]; Matter of Kalkbrenner v Accord Corp., 123 AD3d 1303, 1304 [2014]).
Lynch, J.P., Devine, Aarons and Colangelo, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: The record reflects that the WCLJ interpreted claimant's request for further action as an application to reopen (see generally Matter of White v Herman, 56 AD3d 872, 873 [2008]).

Footnote 2: Gingras' notes reflect that he initially opined that claimant had a 50% SLU at that time, but reconsidered his initial assessment and determined that she had a 55% SLU due to her chronic pain.