Matter of Sanchez v Jacobi Med. Ctr. (2021 NY Slip Op 02039)





Matter of Sanchez v Jacobi Med. Ctr.


2021 NY Slip Op 02039


Decided on April 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 1, 2021

531881

[*1]In the Matter of the Claim of Rurico Sanchez, Appellant,
v
Jacobi Medical Center, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: March 11, 2021

Before: Garry, P.J., Egan Jr., Clark, Aarons and Reynolds Fitzgerald, JJ.


Grey & Grey, LLP, Farmingdale (Robert E. Grey of counsel), for appellant.
James E. Johnson, Corporation Counsel, New York City (Christine Conwell of counsel), for Jacobi Medical Center, respondent.



Egan Jr., J.
Appeal from a decision of the Workers' Compensation Board, filed May 20, 2020, which ruled, among other things, that claimant had a permanent partial disability payable at a weekly rate of $211.56 during time periods when he had previously received various tentative rates.
As outlined in our prior decision in this matter (182 AD3d 121 [2020]), claimant was injured in a work-related accident in 2008 and his claim for workers' compensation benefits was established for injuries to his neck, back, right shoulder and right leg. In February 2012, claimant was classified with a nonschedule permanent partial disability that was moderate in degree with a loss of wage-earning capacity of 50%, entitling him to wage loss benefits of $211.56 per week for a period not to exceed 300 weeks. Claimant underwent causally-related spinal surgery on March 6, 2014 and, based upon that change in his medical condition, he requested further action on the claim. A Workers' Compensation Law Judge (hereinafter WCLJ) thereafter reopened the claim and, in June 2014, awarded claimant temporary total disability benefits in the amount of $423.13 retroactive to the date of the surgery and continuing. Subsequently, and in light of differing medical opinions as to whether claimant was in fact totally disabled, a WCLJ reduced claimant's benefit rate from the temporary total disability rate to a "tentative rate" of $211.56 per week, beginning September 4, 2014. Benefits continued at that rate until December 10, 2015, when claimant underwent a second spinal surgery. Claimant again requested further action and a WCLJ awarded him temporary total disability benefits at $423.13 per week retroactive to the date of the second surgery and continuing. That rate was later adjusted to tentative rates of $300 per week beginning September 17, 2016 and then $317.35 per week beginning February 7, 2017 and continuing.
In October 2017, the employer suspended claimant's benefits based upon its belief that the 300-week durational limit pursuant to Workers' Compensation Law § 15 (3) (w) had lapsed. Claimant opposed and, at the subsequent hearing, argued that the periods of time that he was classified with a temporary total disability and the periods of time that he was paid at a tentative benefit rate should not count against the 300-week limit and that he needed to be reclassified for the time he was paid a tentative rate. A WCLJ found that benefits paid at a temporary total disability rate do not count against the durational limits on nonschedule permanent partial disability cases and that once claimant had surgery and was found to have a temporary total disability, a further change in his condition was necessary to warrant reclassification to a permanent partial disability. Benefits were continued at the $317.35 tentative rate and both parties were instructed to produce medical evidence of permanency. The Workers' Compensation Board initially affirmed the WCLJ's decision, but later rescinded [*2]that determination and ultimately determined that all periods during which a claimant receives awards subsequent to his or her permanent partial disability classification count towards the durational limits under Workers' Compensation Law § 15 (3) (w) and that claimant's limit was therefore exhausted on or about November 8, 2017. The Board then modified the prior decisions where either temporary total disability awards or "tentative" awards were made to claimant, reducing each of the benefit rates therein to $211.56 per week. The Board further concluded that claimant's request for reclassification was untimely as it was made after his permanent partial disability award had been exhausted.
On claimant's appeal of the Board's decision, we reversed (182 AD3d at 127-128). Specifically, we found that temporary total disability benefits do not count towards the durational benefit caps for nonschedule awards under Workers' Compensation Law § 15 (3) (w) (id. at 125-127). Moreover, we found that when a claimant who is classified with a permanent partial disability experiences a setback or exacerbation of his or her condition that results in a reclassification of a temporary total disability, the earlier permanent partial disability classification is displaced and the durational limit of that classification is tolled while the claimant is classified with a temporary total disability (id. at 125-126). Further, insofar as we were unable to determine whether claimant had received proper benefits due to the many time periods where he was paid tentative rates, we remitted the matter in order for the Board to determine claimant's classification during those periods (id. at 127-128). In reversing, we also rejected the Board's finding that claimant's request for reclassification was untimely, inasmuch as Workers' Compensation Law § 15 (6-a) provides that a claimant may seek reclassification at any time (id. at 128). As such, we directed the Board to provide claimant with an opportunity to seek reclassification (id.).
Upon remittal, the Board reclassified claimant with a permanent partial disability payable at the weekly rate of $211.56 for all the periods for which he was receiving tentative rates following his surgeries (i.e., September 4, 2014 to December 10, 2015 and September 15, 2016 to November 6, 2017). The Board also reclassified claimant with a permanent partial disability payable at the $211.56 weekly rate for certain time periods at which he was previously classified with a temporary total disability, specifically from July 15, 2014 to September 4, 2014 and from May 9, 2016 to September 16, 2016.[FN1] Based upon these findings, the Board applied the weeks encompassing all of these time periods to claimant's 300-week durational limit, concluding that the limit was exhausted on or about August 1, 2018. The Board then continued the matter to consider claimant's request for reclassification. Claimant appeals.
Claimant contends that the Board erred [*3]in classifying him as permanently partially disabled for the time periods he had been receiving tentative rates after his respective surgeries. Regarding the time period that claimant was paid a tentative benefit rate after the March 2014 surgery (i.e., September 4, 2014 to December 10, 2015), we agree. Following a hearing on September 4, 2014, a WCLJ classified claimant as having a temporary total disability with benefit payments pursuant to that classification from the date of the surgery to the date of the hearing. The WCLJ then continued benefit payments after the hearing at a "tentative" rate. Upon remittal after our prior decision, the Board reclassified claimant as permanently partially disabled for the time the WCLJ had set the tentative rate based upon the opinion of orthopedic surgeon Maury Harris, who conducted a medical examination of claimant and reviewed his medical records on behalf of the employer on July 15, 2014. Based upon the examination and records review, Harris concluded that claimant had a mild further causally-related partial disability. Harris, however, rendered no opinion regarding maximum medical improvement of the spine or permanency. We note that claimant's treating physicians opined that claimant was still temporarily totally disabled during this time period. Inasmuch as there is no evidence that claimant had reached maximum medical improvement after his 2014 surgery during this time, the Board's determination that claimant's condition warranted a reclassification of permanent partial disability following the surgery is not supported by substantial evidence (see Matter of Murray v South Glens Falls Sch. Dist., 166 AD3d 1263, 1264-1265 [2018]). Accordingly, the matter must be remitted for the Board to reclassify claimant for this time period and to determine the appropriate benefit rate and whether the award will count against claimant's durational limit.
We reach a different conclusion regarding claimant's challenge to the Board's reclassification of his disability for periods of time after the 2015 surgery that he was receiving tentative rates (i.e., September 15, 2016 to November 6, 2017 and going forward). The Board reclassified claimant as permanently partially disabled for these time periods based upon the opinion of orthopedic surgeon Steven Renzoni, who conducted a medical examination of claimant and reviewed his medical records on behalf of the employer in May 2016. Renzoni found that claimant was at maximum medical improvement at that time and opined that claimant had a moderate causally-related partial disability. In light of Renzoni's findings, we find that the Board's reclassification of claimant as having a permanent partial disability payable at $211.56 per week for the time period of September 15, 2016 to November 6, 2017 and going forward is supported by substantial evidence and will not be disturbed (see Matter of Campbell v Interstate Materials Corp., 135 AD3d 1276, 1277-1278 [2016]; Matter [*4]of Soluri v Superformula Prods., Inc., 96 AD3d 1292, 1293 [2012]).[FN2]
We agree, however, with claimant's contention that the Board violated his due process rights when it reclassified him as having a permanent partial disability from July 15, 2014 to September 4, 2014 and from May 9, 2016 to September 16, 2016, time periods after his surgeries when he was previously classified as having a temporary total disability. In our prior decision, we stated that the finding of a temporary total disability following claimant's two surgeries was supported by medical proof and we remitted the matter to the Board with the limited instructions that it reclassify claimant for the periods of time he was paid tentative disability rates (182 AD3d at 126-128). In remitting, we stated that claimant's rights would not be violated by such a reclassification because it was obvious that those rates were tentative and that a definite and final award would be issued at a later time (id. at 128). In contrast, there had been no challenges to the temporary total disability classifications and no indication that the awards were not final. Although the Board clearly possesses continuing jurisdiction over all claims and may "make such modification or change with respect to former findings, awards, decisions orders related thereto, as in its opinion may be just" (Workers' Compensation Law § 123), in light of the limiting instructions in our prior decision and the fact that the temporary total disability classification had not been challenged, we find that the Board abused its discretion by reclassifying claimant back to permanently partially disabled for the two time periods in question without providing him notice and an opportunity to be heard (see Matter of Hailoo v State Ins. Fund, 45 AD3d 1200, 1202 [2007]; Matter of Novara v Cantor Fitzgerald, LP, 20 AD3d 103, 108 [2005], lv denied 5 NY3d 710 [2005]). Accordingly, we reverse the Board's reclassification of claimant as permanently partially disabled during these time periods and remit the matter for that purpose.
Finally, claimant contends that medical opinions reached subsequent to the November 16, 2017 hearing warrant reclassification to a total disability or to a more severe permanent partial disability. Inasmuch as the Board did not consider claimant's request for reclassification in the decision before us — but rather continued the case for that purpose — these arguments are not properly before us and claimant may raise these issues and any other issues regarding reclassification before the Board at that time. Claimant's remaining contentions, to the extent not addressed herein, have been considered and found to be without merit.
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as reclassified claimant as permanently partially disabled for the time periods of July 15, 2014 to December 10, 2015 and from May 9, [*5]2016 to September 16, 2016; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The Board found that the awards for temporary total disability from March 6, 2014 to July 15, 2014 and December 10, 2015 to May 9, 2016 remained in effect.

Footnote 2: Although claimant argues that he should have been allowed the opportunity to cross-examine Renzoni prior to the Board's reclassification of him as having a permanent partial disability upon remittal, there is nothing in the record indicating that claimant ever made any attempt to depose him or request an extension of time to do so and we conclude that the Board did not abuse its discretion in reclassifying claimant on the existing evidence in the record (see Matter of Campbell v Interstate Materials Corp., 135 AD3d at 1277).