Matter of O'Flaherty v MRZ Trucking Corp. (2021 NY Slip Op 03088)





Matter of O'Flaherty v MRZ Trucking Corp.


2021 NY Slip Op 03088


Decided on May 13, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 13, 2021

530257
[*1]In the Matter of the Claim of James O'Flaherty, Appellant,
v
MRZ Trucking Corp. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:April 21, 2021

Before:Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Grey & Grey, LLP, Farmingdale (Brian P. O'Keefe of counsel), for appellant.
Weiss, Wexler & Wornow, PC, New York City (J. Evan Perigoe of counsel), for MRZ Trucking Corp. and another, respondents.



Lynch, J.P.
Appeal from a decision of the Workers' Compensation Board, filed March 27, 2019, which, among other things, reduced claimant's earnings award to the permanent partial disability rate for the period October 6, 2016 to June 26, 2018.
Claimant, a tractor trailer driver, has an established claim for a work-related injury to his back sustained in 2010 for which medical care was authorized and benefits were awarded. In 2014, a Workers' Compensation Law Judge (hereinafter WCLJ) classified claimant as having a permanent partial disability with an 81% loss of wage-earning capacity. The employer's workers' compensation carrier was directed to continue payments at the rate of $600 per week, and claimant was instructed to disclose any change in his work status or degree of impairment. By decision filed April 3, 2015, the Workers' Compensation Board modified the WCLJ's decision, finding that claimant had sustained a 30% loss of wage-earning capacity and directing the carrier to continue payments at the rate of $252.68 per week. Claimant's subsequent application for reconsideration and/or full Board review was denied. In the interim, claimant underwent spinal fusion surgery on October 1, 2015.
Claimant subsequently filed a request for further action alleging a change in his medical condition as the result of his surgery — specifically, that he had sustained a 100% temporary total disability. Following a hearing, a WCLJ directed the carrier to make payments at the permanent partial disability rate ($252.68) up to the date of claimant's surgery and to thereafter continue payments at the rate of $600 per week. Although the WCLJ's written decision did not expressly reclassify claimant's disability as temporary, a review of the hearing minutes reflects that payments made after the date of claimant's surgery were at the temporary total disability rate.
At the carrier's request, claimant underwent an independent medical examination (hereinafter IME) in February 2016, at which time the examining physician concluded that claimant was suffering from a marked (75%) temporary partial disability. Throughout 2016, claimant's treating physician continued to assess claimant's condition as unchanged, i.e., 100% temporarily totally disabled. Claimant was reevaluated by the carrier's medical examiner on October 6, 2016, who was of the view that claimant had not yet reached permanency as there were ongoing issues regarding fusion stability and further imaging studies were planned, and the carrier was directed to continue payments at the $600 "tentative rate." In April 2017, the carrier's examiner again concluded that claimant had neither reached maximum medical improvement nor achieved permanency and opined that claimant had "a marked partial temporary disability."
In January 2018, claimant underwent another IME by a different provider, who opined that, despite the need for ongoing treatment, claimant had reached maximum medical improvement and classified claimant [*2]as having a permanent partial disability of the lumbar spine (class 4, severity I). As a result, claimant was directed to produce medical evidence of permanency, and the matter was continued. Claimant failed to produce the required documentation and, following a hearing held in June 2018, a WCLJ, among other things, classified claimant as permanently partially disabled effective January 19, 2018 (the date of the most recent IME), awarded benefits at the rate of $600 per week payable for claimant's "[t]emporary partial disability" from October 6, 2016 to January 19, 2018 and found that claimant had sustained an 81% loss of wage-earning capacity. Notably, during the course of the hearing, counsel for the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) objected only to the percentage loss of wage-earning capacity assessed. The carrier adopted a similar stance in the context of its administrative appeal of the WCLJ's decision — again arguing only that the WCLJ incorrectly concluded that claimant had sustained an 81% loss of wage-earning capacity.
Upon reviewing the record, the Board found that claimant's loss of wage-earning capacity was 75%, ruled that the effective date of claimant's reclassification was June 25, 2018 (the date of the WCLJ's decision, not the date of the most recent IME) and, on its own motion and without explanation, modified the award made from October 6, 2016 to June 25, 2018 by providing that such payments were to be made at the permanent partial disability rate of $252.68 rather than at the $600 rate previously awarded. This appeal by claimant ensued.[FN1]
There is no question that "the Board has continuing power and jurisdiction over each claim, and it may in its discretion modify or change an award 'as in its opinion may be just'" (Matter of Jones v Burrell Orchards, Inc., 184 AD3d 919, 921 [2020], quoting Workers' Compensation Law § 123) — subject to the time limitations applicable to closed cases (see Matter of King v City of N.Y. Parks & Recreation, 191 AD3d 1048, 1050 [2021]). Additionally, consistent with the provisions of Workers' Compensation Law § 22, the Board may, "upon its own motion or upon the application of any party in interest, on the ground of a change in conditions, . . . review any award, decision or order and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded" (Matter of Hale v Rochester Tel. Corp., 182 AD3d 961, 963 [2020] [internal quotation marks, brackets, ellipsis and citation omitted]; see Matter of Jones v Burrell Orchards, Inc., 184 AD3d at 921). However, the issue here is not whether the Board had the authority to modify claimant's disability rate but, rather, whether the basis for its decision to do so, i.e., that claimant was permanently partially disabled during the relevant time period, is supported by substantial evidence.
In this regard, Workers' Compensation Law § 15 "provides [*3]compensation for four distinct classes of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability" (Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d 121, 125 [2020]). As this Court has made clear, "at any particular time, a claimant can be classified under one, and only one, of the four categories of disability. Thus, even though a person may be medically diagnosed with a permanent partial disability and concurrently experience a temporary exacerbation of his or her medical impairment — for example, after surgery related to the disabling condition — rendering the person completely unable to work in the short term, the statute does not permit a claimant to be classified with both a permanent partial disability and a temporary total disability at the same time. Rather, if a claimant classified with a permanent partial disability experiences a setback or exacerbation that results in a reclassification of a temporary total disability, the earlier permanent partial disability is displaced, until further reclassification" (id. at 125-126).
Although it is true, as the carrier points out, that the WCLJ's December 2015 decision did not expressly reclassify claimant as suffering from a temporary total disability, two points are worth noting. First, as previously observed, a review of the hearing minutes underlying the WCLJ's decision reflects that the sums awarded to claimant after the date of his surgery were directed to be made at the temporary total disability rate. More to the point, there is no question that a finding that a claimant has sustained a permanent partial disability must be supported by medical evidence (see generally Matter of Murray v South Glens Falls Sch. Dist., 166 AD3d 1263, 1264-1265 [2018]) — specifically, proof that "there is a permanent impairment remaining after the claimant has reached maximum medical improvement," which, in turn, "is based on a medical judgment that (a) the claimant has recovered from the work injury to the greatest extent that is expected and (b) no further improvement in his/her condition is reasonably expected" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity §§ 1.1, 1.2, at 8 [2012]).
In this regard, claimant's treating physician consistently opined that claimant was 100% temporarily totally disabled following his surgery in 2016, and the reports of the IMEs performed in October 2016 and April 2017 reflected with equal clarity that claimant had not achieved permanency. Indeed, the report rendered following the April 2017 IME indicated that claimant was suffering from "a marked partial temporary disability." Notably, it was not until January 2018 that one of the carrier's medical examiners concluded that claimant had reached maximum medical improvement and classified claimant as having a permanent partial disability of the lumbar spine. Although the Board is free to resolve conflicting [*4]medical opinions (see Matter of Marable-Greene v All Tr., 190 AD3d 1078, 1078 [2021]) and to discredit those that it deems to be incredible or insufficient, it may not fashion its own (see Matter of Page v Liberty Cent. Sch. Dist., 188 AD3d 1373, 1377 [2020]; Matter of Robinson v New York City Health & Hosps. Corp., 183 AD3d 1160, 1161 [2020]). Absent medical proof that claimant did in fact suffer from a permanent partial disability between October 6, 2016 and June 26, 2018, the Board's decision to award benefits at such rate during that time period is not supported by substantial evidence. Accordingly, the Board's decision is modified to that extent, and this matter is remitted to the Board for further proceedings. In light of this conclusion, we need not address claimant's due process argument.
Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision in modified, without costs, by reversing so much thereof as reduced claimant's earnings award to the permanent partial disability rate for the period October 6, 2016 to June 26, 2018; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: As claimant argues only that the Board erred in modifying the rate at which benefits were to be paid during the period at issue and does not brief the Board's decision to reduce claimant's loss of wage-earning capacity from 81% to 75%, we deem any issue in this regard to be abandoned (see generally Matter of Fuller-Astarita v ABA Transp. Holding Co., 176 AD3d 1530, 1531 [2019]).