Matter of Jennings v Stop & Shop (2022 NY Slip Op 06531)

Matter of Jennings v Stop & Shop

2022 NY Slip Op 06531

Decided on November 17, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 17, 2022

535144
[*1]In the Matter of the Claim of Hope J. Jennings, Respondent,
v
Stop & Shop et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:October 14, 2022

Before:Garry, P.J., Egan Jr., Clark, Ceresia and Fisher, JJ.

Fishman McIntyre Levine Samansky PC, New York City (Scott A. Frossman of counsel), for appellants.
Ouimette, Goldstein & Andrews, LLP, Poughkeepsie (Louis M. Dauerer of counsel), for Hope J. Jennings, respondent.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for Workers' Compensation Board, respondent.

Ceresia, J.
Appeal from a decision of the Workers' Compensation Board, filed October 20, 2021, which ruled, among other things, that claimant was entitled to temporary total disability benefits subsequent to the date of her cervical fusion surgery.
Claimant, a supermarket clerk, sustained a work-related injury to her left shoulder in November 2007 and underwent surgery approximately one year later. Her claim for workers' compensation benefits was established in June 2009, and benefits were awarded at the temporary total disability rate. Following additional awards at various temporary rates under Workers' Compensation Law § 15 (2) and (5), and upon stipulation of the parties, claimant was classified in November 2012 as having a nonschedule permanent partial disability with a 50% loss of wage earning capacity. As a result, claimant was entitled to wage loss benefits not to exceed 300 weeks (see Workers' Compensation Law § 15 [3] [w] [ix]) and was awarded ongoing weekly payments.
Claimant continued to experience pain and underwent causally-related shoulder surgery in December 2017. Following claimant's surgery, she was awarded temporary total disability benefits for a defined postoperative period (December 5, 2017 to February 13, 2018) — after which payments at the permanent partial disability rate resumed. The employer's workers' compensation carrier ceased making payments for lost wages in November 2018 when the durational cap for such benefits was reached. Claimant's pain persisted, however, and she underwent a causally-related anterior cervical discectomy and fusion in July 2019.
In September 2019, claimant filed a request for further action to determine whether she was entitled to additional awards. A hearing ensued — with claimant making two distinct claims for additional benefits. First, relying upon this Court's decision in Matter of Sanchez v Jacobi Med. Ctr. (182 AD3d 121 [3d Dept 2020]), claimant argued that periods of temporary total disability under Workers' Compensation Law § 15 (2) do not count towards the durational cap on permanent partial disability benefits set forth in Workers' Compensation Law § 15 (3) (w). Hence, claimant contended, she was entitled to an additional 10 weeks of permanent partial disability benefits based upon the 10 weeks of temporary total disability incurred following her December 2017 surgery. Second, claimant argued that, notwithstanding the fact that the cap on her permanent partial disability benefits was reached prior to her July 2019 surgery, she was entitled to ongoing temporary total disability benefits following such procedure.
The employer and carrier (hereinafter collectively referred to as the carrier) conceded the former point but disagreed with the latter argument, contending that because claimant's permanent partial disability benefits expired under the durational cap in November 2018, her entitlement to all indemnity benefits — including temporary total disability benefits — ceased at that point. [*2]A Workers' Compensation Law Judge awarded claimant an additional 10 weeks of permanent partial disability benefits (corresponding with claimant's postoperative period of temporary total disability following her December 2017 surgery) but agreed with the carrier that claimant was not entitled to temporary total disability benefits following her July 2019 surgery. Claimant objected to that ruling and reserved her right to seek reclassification.
Claimant subsequently applied for administrative review —seeking temporary total disability benefits following her July 2019 surgery. The carrier opposed the requested relief. By decision filed September 22, 2020, the Workers' Compensation Board declined to award claimant additional benefits, and claimant appealed to this Court. Claimant was granted various extensions of time to perfect her appeal and, during the pendency thereof, the Board — on its own motion — undertook further review of the September 2020 Board panel decision. Ultimately, the matter was accepted for full Board review, and the September 2020 decision was rescinded and remanded to the Board panel for further consideration.[FN1]
By decision filed October 20, 2021, the Board panel — following analysis of this Court's decision in Sanchez — concluded, among other things, that the expiration of the durational cap on claimant's permanent partial disability benefits did not preclude her from seeking temporary total disability benefits following her July 2019 surgery. Noting that claimant was deemed to be temporarily totally disabled following that procedure, the Board ruled that claimant was entitled to awards from July 16, 2019 to May 5, 2020 at the temporary total disability rate and directed the carrier to continue payments in that amount. This appeal by the carrier ensued.[FN2]
Simply put, the issue before this Court is whether claimant is entitled to temporary total disability benefits following a causally-related surgical procedure that occurred after the expiration of the durational cap on her permanent partial disability indemnity benefits. Based upon our analysis of the relevant provisions of Workers' Compensation Law § 15 and our decision in Sanchez, we are satisfied that the expiration of the durational cap has no impact upon claimant's postoperative ability to obtain temporary total disability benefits. Accordingly, the Board's decision is affirmed.
Preliminarily, to the extent that the carrier takes issue with the Board panel's effective reversal of its prior decision, we note that "the Board has continuing power and jurisdiction over each claim, and it may in its discretion modify or change an award 'as in its opinion may be just'" (Matter of Jones v Burrell Orchards, Inc., 184 AD3d 919, 921 [3d Dept 2020], quoting Workers' Compensation Law § 123). Additionally, "the [B]oard may, at any time, without regard to the date of accident, upon its own motion, or on application of any party in interest, reclassify a disability upon proof that [*3]there has been a change in condition" (Workers' Compensation Law § 15 [6-a]). Finally, the Board may depart from its prior precedent if it explains its rationale for doing so (compare Matter of Zaremski v New Visions, 136 AD3d 1176, 1177 [2016]).
As to the merits of the Board's analysis, we begin with the statute itself. Workers' Compensation Law § 15 (1)-(3) and (5) "provides compensation for four distinct classes of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability" (Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d at 125). Compensation for a temporary total disability is governed by Workers' Compensation Law § 15 (2), which provides that such benefits "shall be paid to the employee during the continuance thereof, except as otherwise provided in this chapter." Where, as here, a claimant is classified as having a nonschedule permanent partial disability, Workers' Compensation Law § 15 (3) (w) provides that "[c]ompensation under [such] paragraph shall be payable during the continuance of such permanent partial disability" — subject to the durational limits set forth therein. Consistent with the statutory language, "at any particular time, a claimant can be classified under one, and only one, of the four categories of disability" (Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d at 125). Accordingly, "if a claimant classified with a permanent partial disability experiences a setback or exacerbation that results in a reclassification of a temporary total disability, the earlier permanent partial disability classification is displaced, until further reclassification" (id. at 125-126).[FN3]
At the heart of the parties' dispute is whether the durational benefit caps for nonschedule awards under Workers' Compensation Law § 15 (3) (w) apply to all indemnity benefits — an issue that this Court addressed and decided in Sanchez. As we noted in that matter, "the durational benefit caps for nonschedule awards under Workers' Compensation Law § 15 (3) (w) apply to 'all compensation payable under this paragraph' . . . . However, benefits paid during a period of temporary total disability are payable under a separate paragraph, section 15 (2), and we are not persuaded . . . that the 'otherwise provided' language of Workers' Compensation Law § 15 (2) contemplates the durational limits of Workers' Compensation Law § 15 (3) (w) inasmuch as the former subdivision existed prior to the 2007 amendment of the latter" (Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d at 127). In reaching this result, we focused on the "precise references to paragraphs and subdivisions thereof" throughout Workers' Compensation Law § 15 (Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d at 127).
The carrier argues that Sanchez is distinguishable because that matter only addressed whether a nonschedule award for a permanent partial disability should include preceding or intervening periods of temporary total disability and, [*4]hence, did not resolve the issue now presented — namely, whether a claimant may seek temporary total disability benefits after the durational benefit cap for a nonschedule award under Workers' Compensation Law § 15 (3) (w) has expired. According to the carrier, the answer to that inquiry is "no" because the durational limits set forth in Workers' Compensation Law § 15 (3) (w) apply to all indemnity benefits. Support for that conclusion, the carrier contends, may be found in the last sentence of Workers' Compensation Law § 15 (3) (w), which provides that, "[f]or those claimants classified as permanently partially disabled who no longer receive indemnity payments because they have surpassed their number of maximum benefit weeks, . . . [t]here will be a presumption that medical services shall continue notwithstanding the completion of the time period for compensation set forth in this section" (Workers' Compensation Law § 15 [3] [w] [1]). Thus, according to the carrier, once the durational cap for permanent partial disability payments expires under Workers' Compensation Law § 15 (3) (w), the only ongoing benefit to which a claimant is entitled is the provision of medical services — notwithstanding any exacerbation or change in the claimant's condition or classification.
The carrier's analysis, in our view, overlooks two important points. First, although a claimant indeed may have but one classification at any given point in time, such classification — premised upon the underlying degree of disability — may change over time (see Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d at 125-126). Second, and as noted previously, temporary total disability benefits (see Workers' Compensation Law § 15 [2]) and permanent partial disability benefits (see Workers' Compensation Law § 15 [3] [w]) are payable under two distinct statutory provisions, and the restrictive language employed under Workers' Compensation Law § 15 (3) (w) — "all compensation payable under this paragraph" (emphasis added) — makes clear that such paragraph does not, as the carrier now contends, encompass all indemnity benefits payable under Workers' Compensation Law § 15. Inasmuch as the Board's October 2021 decision was grounded upon thoughtful analysis of our decision in Sanchez and appropriate reconsideration of its impact upon claimant's request for temporary total disability benefits, we find that the Board's decision is supported by substantial evidence. The carrier's remaining arguments in support of reversal have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Clark and Fisher, JJ., concur.
ORDERED that the decision is affirmed, with costs to claimant.

Footnotes

Footnote 1: As a result, claimant's earlier appeal was not perfected.

Footnote 2: Although the carrier challenges the Board's conclusion that claimant is entitled to temporary total disability awards pursuant to Workers' Compensation Law § 15 (2) following her July 2019 surgery, it does not dispute the Board's finding that claimant has been temporarily totally disabled since such surgery.

Footnote 3: Although the Board — in the context of its October 2021 decision — did not expressly reclassify claimant as having a temporary total disability, it effectively did so when it concluded that "the uncontroverted medical evidence reflects that claimant has been temporarily totally disabled since her July 16, 2019 surgery" and awarded her temporary total disability benefits upon that basis (see e.g. Matter of O'Flaherty v MRZ Trucking Corp., 194 AD3d 1205, 1208 [3d Dept 2021]).