Matter of Lalima v New York State Dept. of State (2023 NY Slip Op 01121)

Matter of Lalima v New York State Dept. of State

2023 NY Slip Op 01121

Decided on March 2, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 2, 2023

534906
[*1]In the Matter of Joseph E. Lalima, Doing Business as Lalima's Barber Shop, Petitioner,
v
New York State Department of State et al., Respondents.

Calendar Date:January 13, 2023

Before:Egan Jr., J.P., Lynch, Clark, Ceresia and Fisher, JJ.

The Towne Law Firm, PC, Albany (Megan Bassler of counsel), for petitioner.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for respondents.

Egan Jr., J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Special Deputy Secretary of State revoking petitioner's barber operator license and barber shop license.
Petitioner obtained his barber's license shortly after his high school graduation in 1963 and, except for his Army service during the Vietnam War, has worked as a barber since that time. He was also licensed to operate a barber shop and, as of 2020, had done so for 45 years out of his residence in the City of Kingston, Ulster County. On March 19, 2020, in response to the emerging COVID-19 pandemic, Governor Andrew Cuomo ordered all barber shops in the state to close no later than March 21, 2020 (see Executive Order [A. Cuomo] No. 202.7 [9 NYCRR 8.202.7]). Petitioner complied but, after reading an article from his local newspaper's March 21, 2020 edition headlined "Cuomo: Work at home, don't gather," he came to believe that he could resume operations since he worked out of his home. He accordingly reopened his barber shop on March 27, 2020, cutting the hair of first responders and regular customers, but closed again on May 11, 2020 when he was hospitalized for breathing problems that he attributed to the lingering effects of a January 2020 bout of pneumonia and his chronic obstructive pulmonary disease, but turned out to be due to COVID-19.
Petitioner was released from the hospital later that month and, in June 2020, reopened his barber shop after Governor Cuomo allowed barber shops in petitioner's area to resume operations subject to compliance with COVID-19 guidelines promulgated by the Department of Health (see Executive Order [A. Cuomo] No. 202.35 [9 NYCRR 8.202.35]; Reopening New York: Hair Salon & Barbershop Guidelines for Employers and Employees, available at https://www.governor.ny.gov/sites/default/files/atoms/files/
HairSalonsAndBarbershopSummaryGuidance.pdf [last accessed Jan. 25, 2023]). Petitioner's actions had come to the attention of state officials when they received national media coverage, however, prompting the Division of Licensing Services (hereinafter the Division) of respondent Department of State to commence an investigation into what had transpired. The Division's investigator conducted a telephone interview with petitioner in June 2020, during which petitioner stated that he had misunderstood the March 2020 newspaper article and regretted reopening. Petitioner further submitted a signed statement to the investigator in which he reiterated that he realized that he should not have reopened and that he "sincerely apologize[d] for [his] actions." The investigator thereafter conducted an August 14, 2020 inspection of petitioner's barber shop that resulted in petitioner being ticketed for violating several regulatory provisions governing sanitation at barbershops and beauty parlors (see 10 NYCRR 10.1 et seq. [hereinafter the sanitary code]) — namely, the failure [*2]to post a copy of the sanitary code and the presence of a neck duster used to brush loose hair off of a customer's neck and ears — as well as aspects of the COVID-19 guidelines.
On August 31, 2020, the Division filed a disciplinary complaint against petitioner seeking suspension or revocation of his licenses to practice barbering and operate a barber shop pursuant to General Business Law § 441. The Division specifically alleged that petitioner had "practic[ed] with an infectious or communicable disease" (see General Business Law § 441 [a] [2]; 10 NYCRR 10.31), violated the sanitary code, executive orders and COVID-19 guidelines in his operation of the barber shop (see General Business Law § 441 [a] [8]), and acted in a manner reflecting incompetence (see General Business Law § 441 [a] [6]).
Following an October 2020 hearing at which petitioner and the investigator testified, the Administrative Law Judge (hereinafter ALJ) issued a May 2021 decision determining that petitioner did not knowingly practice with an infectious disease because he had good reason to believe that his symptoms were attributable to his preexisting health conditions. The ALJ also determined that petitioner did violate the sanitary code by failing to post a copy of the code and having a neck duster in his shop, although the ALJ lacked authority under General Business Law § 441 (a) (8) to also discipline him for violating executive orders and COVID-19 guidelines (see General Business Law § 441 [a] [8]; 10 NYCRR 10.2, 10.27). The ALJ further found, however, that petitioner had exhibited untrustworthiness and incompetence by operating the barber shop in violation of an executive order directing that it be closed, recklessly continuing to do so with symptoms of what he later learned was COVID-19, and then reopening and operating the shop without complying with the COVID-19 guidelines (see General Business Law § 441 [a] [6]). The ALJ determined that the appropriate penalty was the immediate revocation of petitioner's barber operator and barber shop licenses. Respondent Special Deputy Secretary of State (hereinafter the Secretary) affirmed, prompting petitioner to commence this CPLR article 78 proceeding.
Petitioner does not dispute the Secretary's factual findings; he does, however, argue that the Secretary applied the incorrect standard in assessing his incompetence by including untrustworthiness within the scope of General Business Law § 441 (a) (6). Petitioner specifically notes that General Business Law article 28, the article governing the licensing and conduct of barbers, does not reference "untrustworthiness," and he suggests that the standard of incompetence and untrustworthiness was erroneously derived from the separate disciplinary standards for real estate brokers (see Real Property Law § 441-c [1] [a]). We need not defer to the Secretary's reading of General Business Law article 28, "as this is a matter of pure statutory interpretation and does not require 'knowledge [*3]of underlying operational practices or the evaluation of factual data and rational inferences' " (Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 127 [3d Dept 2022], quoting Hollandale Apts. & Health Club, LLC v Bonesteel, 173 AD3d 55, 67 [3d Dept 2019]). Nevertheless, after reviewing "the statutory language and legislative history" as is required, we agree with the Secretary's interpretation that untrustworthiness is an aspect of incompetence within the meaning of General Business Law article 28 (Matter of Purcell v New York State Tax Appeals Trib., 167 AD3d 1101, 1103 [3d Dept 2018], appeal dismissed 33 NY3d 999 [2019], lv denied 33 NY3d 913 [2019]; see Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d 121, 124 [3d Dept 2020]).
General Business Law § 441 (a) (6) makes "[i]ncompetency" a ground for disciplinary action against a barber and, construing that word "according to its natural and most obvious sense . . . in accordance with its ordinary and accepted meaning" (McKinney's Cons Laws of NY, Statutes § 94, Comment; accord Samiento v World Yacht Inc., 10 NY3d 70, 78 [2008]), the statute requires that a barber must be "inadequate to or unsuitable for" the work (Merriam-Webster.com Dictionary, incompetent [https://www.merriam-webster.com/dictionary/incompetent]). As the goal of General Business Law article 28 is "to safeguard health by sanitation and other measures" in barbering (Pettalino v State of New York, 24 AD2d 524, 525 [3d Dept 1965]), a barber's suitability and adequacy for the job is dependent upon having the "technical skill, training and experience, good health, good moral characterand other fundamental qualities and qualifications" needed to protect the health of his or her patrons (General Business Law § 430). A barber who cannot be trusted to do so — either because the barber lacks knowledge of the appropriate standards or does not comply with them because of a lack "of sufficiently good moral character" — is inadequate to and unsuitable for the job, in other words, and such untrustworthiness constitutes incompetence within the meaning of General Business Law § 441 (a) (6) (Matter of Pond v Lomenzo, 32 AD2d 887, 888 [4th Dept 1969]). The Secretary therefore properly applied that standard to find that petitioner's actions, and notably his decision to reopen the shop in violation of an executive order, his continuing to operate despite having symptoms of what proved to be COVID-19, and then failing to learn the requirements of the COVID-19 guidelines and implement them, reflected incompetence and untrustworthiness.
As for petitioner's further challenge to the penalty imposed of revocation, "[a]n administrative penalty must be upheld unless it is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law" (Matter of Lewis v New York State Off. of Children & Family Servs., 114 AD3d 1065, 1067 [*4][3d Dept 2014] [internal quotation marks and citations omitted]; see Matter of Kelly v Safir, 96 NY2d 32, 38 [2001]; Matter of Patel v New York State Educ. Dept., 211 AD3d 1149, 1152 [3d Dept 2022]). A penalty is shocking to one's sense of fairness if it "is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 234 [1974]; accord Matter of Figueroa v New York State Off. of Alcoholism & Substance Abuse Servs., 149 AD3d 1394, 1396 [3d Dept 2017]). Petitioner argues, and we agree, that such is the case here.
The Secretary is empowered to impose a range of penalties for a barber's misconduct, with a reprimand being the least severe, then a fine of up to $500, then license suspension and, most seriously, license revocation (see General Business Law §§ 441 [a]; 443). As noted above, petitioner has been a licensed barber since 1963 and, before the proceedings at issue here, had a clean disciplinary record for nearly six decades. The ALJ found that petitioner "sincerely believed" that he was entitled to reopen his shop in March 2020 and was remorseful for having done so, as well as that he did not knowingly work while suffering from COVID-19. Further, although petitioner failed to operate in accordance with COVID-19 guidelines after he was permitted to reopen, it appears that such resulted from his lack of familiarity with the particulars of the guidelines, and it must be noted that those guidelines and other COVID-19 restrictions had been lifted by the time of the Secretary's determination (see Executive Order [A. Cuomo] No. 210 [9 NYCRR 8.210]; see also L 2021, ch 71). It is accordingly unclear how petitioner's conduct during the COVID-19 emergency would pose an ongoing threat to the public that would warrant the maximum sanction of permanently barring him from performing the work he had otherwise done without incident for almost 60 years. "Under these circumstances, and considering petitioner's otherwise unblemished record, revocation was too severe a penalty," and we therefore "remit to [the Secretary] to impose a less severe penalty" (Matter of Lewis v New York State Off. of Children & Family Servs., 114 AD3d at 1068; see Rob Tess Rest. Corp. v New York State Liq. Auth., 49 NY2d 874, 876 [1980]; Matter of Diefenthaler v Klein, 27 AD3d 347, 349 [1st Dept 2006]).
Clark, Ceresia and Fisher, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent. To begin, I agree with the majority that substantial evidence supports respondent Special Deputy Secretary of State's (hereinafter the Secretary) determination that petitioner's actions constituted "incompetency" within [*5]the meaning of General Business Law § 441 (a) (6). I do not, however, agree that the penalty of license revocation constitutes an abuse of discretion as a matter of law (see Matter of Kelly v Safir, 96 NY2d 32, 38-39 [2001]). That governing standard does not allow this Court to otherwise exercise "discretionary authority or interest of justice jurisdiction in reviewing the penalty" (id. at 38). The events at hand took place during the early months of the COVID-19 pandemic — a period of extraordinary uncertainty and concern for the public health, with no vaccine on the horizon. In that context, the Administrative Law Judge (hereinafter ALJ) observed that she could not "ignore the egregious violations committed in this case." Although petitioner professed that he either misunderstood or was unaware of the safety restrictions imposed under the prevailing executive orders (see Executive Order [A. Cuomo] No. 202.7 [9 NYCRR 8.202.7]; Executive Order [A. Cuomo] No. 202.35 [9 NYCRR 8.202.35]), the ALJ rightly emphasized that it was petitioner's obligation to understand and follow those directives. The very purpose of imposing a licensing requirement on the practice of barbering is "to safeguard the health of the persons who patronize the barber shops of our state" (General Business Law § 430).
It is particularly troubling that petitioner continued to serve customers while experiencing COVID-19 type symptoms. During his testimony, petitioner attempted to minimize his actions by testifying that he only began to experience breathing difficulties on May 9, 2020, two days before being hospitalized and testing positive for COVID-19. By comparison, the May 11, 2020 medical records provide a history of petitioner "complaining of a [two-]week history of progressive weakness, cough, and fever for the past [two] weeks." The Division of Licensing Services' investigator testified that petitioner indicated that he was experiencing symptoms for about three weeks before his hospitalization. The ALJ observed that this discrepancy as to the onset of petitioner's symptoms "not only negatively affected his credibility, but cast significant doubt on his trustworthiness."
Moreover, after reopening in June 2020, petitioner failed to comply with the guidance directive issued by the Department of Health. The Governor's Executive Order No. 202.35 authorized barbershops to reopen as of May 29, 2020, emphasizing the business "must be operated subject to the guidance promulgated by the Department of Health." Petitioner's continued failures left the ALJ with "no confidence that compliance will occur." For these reasons, the ALJ recommended a revocation of petitioner's license, a recommendation which the Secretary reasonably adopted. In my view, that decision was not an abuse of discretion as a matter of law and should be affirmed (see Matter of Kelly v Safir, 96 NY2d at 38).
ADJUDGED that the determination is modified, on the law, without costs, by annulling so much thereof [*6]as imposed a penalty of revocation of petitioner's barber shop license and barber operator license; petition granted to that extent and matter remitted to respondent Special Deputy Secretary of State for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.